# CHARLESTON.

DILLON & HARRISON v. SUBURBAN LAND COMPANY.

Submitted December 2, 1913. Decided December 9, 1913.

1. CONTRACTS—*Railroads—Construction Contract—Modification.*

Where plaintiffs rely on and prove a new or modified contract to build a road, made after partial performance of the original contract, and their proof shows breach of both contracts on their part, without legal excuse, and nothing done under the new, their right of recovery for work done under the original contract, can not be controlled by the provisions of the new. (p. 370).

2. WORK AND LABOR—*Construction Contract—Actions by Contractors—Defense.*

Where by the provisions of such original contract to build a road defendant was entitled to withhold a part of the price one year after completion, as security for good workmanship and good material, and the contract has been only partially performed, by the contractors, in a suit by them for the value of the labor done and material furnished and appropriated by the defendant, defendant cannot defeat recovery by plaintiffs for the value of such labor and material, because the amount demanded is less than the amount retainable under the contract. Right of action in such cases is not upon the contract but on the implied promise of defendant to pay what such labor and materials are reasonably worth, measured by the contract price less payments, and damages, and what it would cost to complete the contract. (p. 370).

3. SAME—*Partial Performance—Right to Consideration.*

Right of recovery for work done and material furnished under such a broken contract is dependable, however, on whether the contract is apportionable; if not, the rule is that no part of the consideration can be recovered. (p. 371).

4. SAME—*Construction Contract—When Apportionable—Recovery of Consideration.*

Where such contract provides for periodical payments on the contract price, on estimates of engineers, it is apportionable, and there is no obstacle in the way of a proper recovery for the work done and material provided. (p. 371).

5. DAMAGES—*Construction Contract—Breach—Measure of Damages.*

The general rule for measuring the damages in cases of broken and partially performed contracts, is the stipulated price less payments and the sum which it will take to complete the job according to the contract. (p. 372).

6. SAME—*Trial—Construction Contract—Action for Consideration—Instructions.*

Instructions to the jury on the trial of such an action, contravening this rule of damages, were erroneous and should not have been given. (p. 372).

Error to Circuit Court, Cabell County.

Action by Dillon & Harrison against the Suburban Land Company. Judgment for plaintiffs, and defendant brings error.

*Reversed, verdict set aside, and new trial awarded.*

*Enslow, Fitzpatrick & Baker* and *Meek & Renshaw,* for plaintiff in error.

*Isbell & Perry,* for defendants in error.

MILLER, JUDGE:

From a judgment for plaintiffs for $863.50, on the verdict of the jury, defendant brings error.

The action was upon the common counts in assumpsit, with bill of particulars attached, for an alleged balance due on a contract to build two miles of road upon defendant's suburban land.

The defense was non assumpsit, payments, and a notice of recoupment of damages for alleged breach of the contract. Accompanying the plea of payments was an account specifying the several payments made, aggregating $1,636.40.

By the original contract plaintiffs agreed, in substance, to grade and build the road, the grading, materials furnished, and work done thereunder to be strictly in accordance with the plans and specifications; and they were to be paid therefor by the defendant at the rate of $3,000.00 per mile, and estimates of the amount of work done and completed in a satisfactory manner to defendant's engineers were to be made every two weeks; whereupon defendant, withholding 10% of the amount till completion, was to pay plaintiffs the remainder, or to such parties as might be entitled thereto on account of labor and materials furnished for said work, as the said engineers might direct.

Plaintiffs thereby also agreed to guarantee the workmanship and material for one year from completion of the con-

tract, and in the event said road or any part thereof should not at the end of that period be in as good condition as when completed, except such injury as might be done to the limestone surface thereof by ordinary use, plaintiffs agreed to remove the unsatisfactory part of the road and replace the same with work and materials satisfactory to defendant.

Subject to inclemency of weather preventing it, plaintiffs agreed to complete the work on or before July 1, 1908, and faithful performance of the contract by them was to be secured by a bond in the penalty of $4,000.00, with satisfactory security. By a subsequent agreement the giving of the bond was waived, and in lieu thereof it was stipulated that defendant should retain $1,000.00, of the contract price, for one year after completion of the contract.

This contract, in writing, was signed by plaintiffs, and was executed on behalf of defendant by Blair P. Wilson, general manager, who is conceded to have had authority of his board of directors to make the contract.

It is proven that work under the contract had so far progressed by about July 1, 1908, that about a mile of the road had been completed, not in all respects finished and in perfect condition, but nearly so, but that on account of the intoxication and neglect of one of the partners the work had been delayed, and it was then that Dillon, the other partner, appealed to the president and general manager of defendant for advice and direction, saying that he would not be able to complete the contract under existing conditions. He swears that they advised him to throw up the job, and that they would send the engineers to make a final estimate of the work done, and for which they would pay him in full; he to superintend the completion of the job under defendant's direction at the rate of $3.00 per day. After the engineers reported he swears defendant's general manager wanted to cut him down to some where over two hundred dollars, which he would not stand. It was then agreed, he says, that each of the parties should select an engineer to go on the ground and make an estimate, and that defendant was to pay him on the basis of that estimate. One of the estimates to which he refers, dated July 4, 1908, and which he introduced in evidence, is headed "Estimate No. 5 to Dillon & Harrison, Contractors", and is as fol-

lows: By 6500 cubic yards of excavation, at 21c, $1365.00. By 600 cubic yards of stone, at 1.25, $725.00. By 90 cubic yards of crushed limestone, at 1.75, $157.50. Total $2,247.50. Less 10% retained, $224.75. Balance $2,022.75. Less previous estimates, $1,359.00. Amount of this estimate, $663.75.

Another estimate, however, introduced by plaintiffs in connection with the testimony of Maupin, one of the engineers of the defendant company, dated July 13, 1908, addressed to the defendant company, and which Maupin swears was made for Dillon & Harrison because they wanted it, reads as follows: "Gentlemen: Complying with your directions for an accurate and complete estimate of the amount of work done to date on the road improvement for Westmoreland, we find as follows: 4010 cubic yards of excavation, 656.8 cubic yards of sand stone foundation, 92 cubic yards of limestone. Dillon and Harrison's contract price is $3000.00 per mile for a completed roadway, 14 feet in width, with 3 inches sandstone bed, finished with 3 inches crushed limestone. Estimating one mile of completed work, we find that the excavation and necessary material will amount to the following: Excavation 5280 cubic yards, Sandstone foundation 684 cubic yards, Crushed limestone 684 cubic yards. Estimating this unfinished work on what we consider equitable prices for the different materials we have: 4010 cubic yards excavation at 21c, $842.10, 656.8 cubic yards sandstone at 1.35, $886.68, 92 cubic yards limestone at 1.56, $143.52. Full estimate on work done $1872.30. From this estimate we would advise that 10% be withheld for finishing and rolling." Signed, "The Leete-Maupin Engineering Co., Per A. B. Maupin."

The engineer selected by the plaintiffs was Howard Palmer. At the instance of the plaintiffs he made a subsequent estimate of the work of excavation done by plaintiffs, as of August 8, 1908, which purports to show 6,252.3 cubic yards of excavation, about 250 cubic yards short of the estimate of the Leete-Maupin Company, of July 4, and about 2240 cubic yards in excess of the estimate of the Leete-Maupin Company, of July 13. Palmer does not furnish any estimate of the stone furnished. It is fully proven that the estimate of July 4, was one of the bi-monthly estimates made under the contract, was not made from actual measurements, and was not, and not

intended to be very accurate. This is the main substance of the evidence offered by plaintiffs and upon which they rely.

In argument plaintiffs' counsel endeavor to support the judgment upon the estimate of July 4, as follows: Work done, $2247.50; previous estimates, $1384.00; balance, $863.50, the exact amount of the verdict and judgment. But the previous estimates reported were $1359.00, not $1384.00. On the theory of plaintiffs' counsel, therefore, the verdict and judgment should have been $888.50, a difference of $25.00.

But defendant denies any contract modifying the original, binding it. It is conceded, however, by Wilson, general manager, and Bowman, secretary, both of whom were present, that a modification, substantially on the terms proven by plaintiffs was considered. According to Wilson's evidence, Dillon went to his office about July 1, representing that he was having trouble with his partner and that it would be impossible for him to complete the work if he kept Harrison with him, and inquired if some new arrangement could not be made so that he could get rid of Harrison and go ahead with the work; that he called in Bowman, secretary, explained to him Dillon's situation, and that he and Bowman agreed that if they could have a settlement agreeable to both parties they might settle with Dillon, so he might finish the job by the day, and in the same connection he says: "So we decided we would send an engineer down to make a final estimate, which we did, and afterwards Mr. Dillon refused to accept it. And that is all that ever took place between Mr. Dillon and Mr. Bowman and myself. We never had any further conversation on the subject." Asked whether or not at that time or at any other time they made any agreements with Dillon and Harrison to waive the written contract, he answered: "No, I had no right to do that. I made no such statement as that. I did not have any authority to do it." On cross-examination, however, referring to the two estimates made by the Leete-Maupin Company, Wilson testifies as follows: "Q. If Mr. Dillon would have agreed to the $600.00, would you have paid it? A. We would have settled on Messrs. Leete and Maupin's final estimate. Q. Were you trying to get together on a settlement? A. Yes, sir, he was very anxious to get rid of his partner and we were very anxious to settle with him. * *

\*     \*     Q. The only object you had in sending your
engineer down there with Mr. Dillon's engineer was to get
the estimate and make the settlement? A. To get a final esti-
mate. Q. You wanted to get a final estimate? A. Yes,
sir. Q. And you did agree to pay him then whatever that
came to, didn't you? A No, sir, provided we would have
to have a meeting of the Board of Directors, and if it was
decided to give us that authority to break the contract and
employ Mr. Dillon by the day.'' He admits, however, that no
effort was made to get the board of directors together, excus-
ing himself on the ground that they did not live in Hunting-
ton. The evidence of Bowman, the secretary, is substantially
to the same effect. Both Wilson and Bowman were directors of
the company. No evidence of by-law or minutes of the board
of directors defining or limiting the power of the general man-
ager, or secretary, respecting the contract in question, were
offered in evidence.

Because defendant refused, as he claimed, to carry out the
new agreement and to pay him the balance according to the
July 4 estimate of the engineers, Dillon admits he did nothing
further under the old or new contract, further excusing him-
self by saying that as defendant failed to pay him, as agreed,
he couldn't go ahead with the work, and didn't do so.

Afterward, as the evidence shows, defendant did work on
the two miles of unfinished road, not according to original
plans and specifications, but in an inferior way, disbursing
on account thereof some fourteen or fifteen hundred dollars.
Defendant undertook to show by the evidence of its engineers,
that it would require an expenditure of some $5,816.90, to
complete the plaintiffs' contract, which together with what
it had paid them on the work done on the contract would
have made the total cost of the road completed, $7,453.30, or
$1,453.30 in excess of the contract price, and which it insisted
represented its damages for breach of the contract. As noted,
however, the defendant did not complete the contract of plain-
tiffs according to the plans and specifications, but did an infer-
ior job, expending thereon between fourteen and fifteen hun-
dred dollars.

Upon this state of the pleadings and proofs we are called
upon to determine the legal rights of the parties, and the cor

rectness or incorrectness of the judgment to which the present writ of error relates.

As we understand counsel for plaintiffs, the propositions they contend for, are: First, that there was a new or abrogated contract between plaintiffs, represented by Dillon, and the defendant, binding it, a breach of which excused further performance of the original contract, as well as the doing of anything by them under the new; wherefore their failure to go on with the work did not amount to a willful abandonment of the contracts without the consent and acquiescence of defendant. Second, that whether or no plaintiffs are entitled to recover the full amount of the estimate for the work actually done, they are entitled to recover the value to the defendant of that work done and material furnished on the basis of the quantum meruit, or quantum valebant.

On the other hand, defendant's counsel contend: First, that there was no new contract binding defendant, or waiving performance of the original contract by plaintiffs, because (a) the evidence does not establish such contract; (b) Wilson, general manager, and Bowman, secretary, were without authority in the premises, and, conceding such new contract to have been proven it was without consideration, therefore, without legal effect. Second, that as under the original contract defendant had the right to retain $1,000.00, a sum greater than the amount of the verdict and judgment recovered, for the period of one year from the completion of the contract, as security for the workmanship and material used in the construction of the road, plaintiffs were not entitled to recover anything at the institution of this suit. And, third, that defendant's damages for the non-performance of the contract by plaintiffs, based on the estimates of the engineers, as to what it would cost to complete the contract is in excess of the amount found by the jury, and the judgment of the court thereon, and which upon its notice of recoupment it was entitled to offset against plaintiffs' damages.

Instructions to the jury, covering the different theories of counsel were either given or refused by the trial court, and constitute the subject of some of the exceptions and errors assigned and relied on here.

Before attempting to test the correctness or incorrectness

of these instructions by the legal principles applicable to the concrete case, it will be necessary to determine what contract is to govern, and the status of the respective parties in relation thereto.

First, was there a new or modified contract? As indicated, defendant denies it, urging in support of its contention, want of authority in the secretary and general manager, and want of consideration. No express authority was shown. But assuming apparent authority in these officers, particularly in the general manager, with no by-law or resolution in evidence showing want of authority, and that the promise of Dillon to do the work at a per diem charge, was sufficient to support defendant's alleged promise to waive further performance by plaintiffs of the original contract, a promise for a promise, and that the jury on the evidence might have found such new contract, we have this question: was the alleged new contract broken, or repudiated by plaintiffs? We think there is no room for controversy that it was, and that they are not entitled to rely on that contract here. According to Dillon's evidence the agreement was that an accurate estimate of the value of the work and labor done should be made by the engineers chosen. Those engineers made such estimate, not the one of July 4, and the one upon which the verdict and judgment were clearly predicated, but that of July 13, 1908. Plaintiffs refused to accept the latter estimate, and settle according to it, and Dillon did nothing in performance of the alleged new contract. This status of the parties with reference to the alleged new contract left nothing by which to solve or measure their legal rights, except the old or original contract, broken by plaintiffs. Plaintiffs had the right to proceed under the original contract, but concededly did not do so, and admit their inability to have performed that contract.

But were plaintiffs entitled to recover upon the quantum meruit or quantum valebant, for the work and labor done and material furnished under the original contract? To this proposition the second and third propositions of defendant's counsel are replied, namely, right to retain $1,000.00 as security for good workmanship and good material, as provided in the contract, and damages for non-performance of the contract.

Had defendant right in this action to retain the $1,000.00 stipulated in the contract? We doubt it, though it may be and probably is immaterial, in view of our conclusion as to defendant's third or last proposition. Plaintiffs having broken the contract can recover nothing under it; their rights, if any, must be asserted not upon the contract, for that is out of the case. That contract having been broken by them their right of action, if any, is upon the contract or promise which the law raises that defendant will pay what the labor and material provided is reasonably worth to it, the quantum meruit or the quantum valebant. *Smith* v. *Packard,* 94 Va. 730; 2 Chitty on Cont., 826-7; *Cutter* v. *Powell,* 2 Smith's Leading Cases, 1, 12, and note page 13.

But even this right, as a general rule, is dependable on whether or not the contract is apportionable. If it is not, then the rule is that no part of the consideration can be recovered until the whole of that for which the consideration is to be paid is performed. 2 Parsons on Cont., (8th ed.) 522, 523, and notes.

In this case we think the contract is apportionable. It provides in specific terms for estimates and partial payments every two weeks. Under the contract several of these bi-monthly estimates were made, including that of July 4, 1908, and payments were made accordingly on all of them except the last, withheld because plaintiffs, through Dillon, acknowledged their inability to perform the contract, breaking it without legal excuse. So that on this score there is nothing in the way of plaintiffs' recovery.

The right of the plaintiffs then being outside of and not under the contract, would not the rights of the defendant, in any action by plaintiffs for the value of the labor and material furnished, lie in the recoupment of these damages against the plaintiffs' demand, or by a separate action on the contract for the damages sustained? We think they would be confined to these remedies. 4 Elliott on Cont., section 3701.

But whether or not we be right in our conclusion respecting the right of retention, we are clearly of opinion that defendant has the right to recoup such damages as the jury may find from the evidence it has sustained up to the amount of the plaintiffs' claim. The evidence of the defendant's

engineers tended to show by their estimates that the cost of completing the job would exceed the contract price by from fourteen to fifteen hundred dollars. These estimates appear to have been based upon the same figures on which they based their estimates of July 4, and 13, 1908. There was nothing offered in evidence by the plaintiffs to the contrary, except their own original contract showing what they had agreed to do the work for. We think the evidence of the engineers was admissible on this question, not conclusive of course, but to go to the jury and from which the jury might determine the damages sustained.

The rule for the measure of damages in such cases with but few, if any, exceptions, seems to be, where the work has only been partially performed, the stipulated price less the sum which it would take to complete the work according to the agreement. 2 Chitty on Cont., (11th ed.) 827; 4 Elliott on Cont., sections 3700, 3722; *Gleason* v. *Smith,* 9 Cush. 484, 57 Am. Dec. 62; *Hayward* v. *Leonard,* 7 Pick. 181, 19 Am. Dec. 268, note page 278..

Lastly, as to the instructions, and the theories on which the case was submitted to the jury. Plaintiffs asked no instructions. But the court on its own motion gave an instruction to the jury, intended no doubt to cover plaintiffs' theories of the case, which was objected to by the defendant, and which is assigned as error here. This instruction is as follows: "The Court instructs the jury that if they believe from the evidence in this case, that the plaintiffs had a contract to do certain work for the defendant as a whole, and that after having partially completed the work, or done a part of the work, it was agreed between the plaintiffs and the defendant that the plaintiffs would quit the work, and that the plaintiffs and defendant agreed to appoint an engineer each to ascertain the value of the work done and to pay the plaintiffs what it was reasonably worth, then if you find from all of the evidence, facts and circumstances in the case that there was certian work done by the plaintiffs that was not paid for, and has not been paid for, then you shall find for the plaintiffs and assess their damage at whatever amount you may think is just and fair, if anything, taking all the evidence, facts and circumstances into consideration; deducting however from such

amount any damage that the jury may find that the defendant has sustained by reason of the plaintiffs's failure to complete the said work according to the terms of the said contracts, unless the jury further find that such failure was with the consent of the defendant; and if the jury find that the defendant did so consent, then they shall find for the plaintiffs and assess their damages as already stated.''

The errors in this instruction are not very definitely pointed out by defendant's counsel. They quote numerous legal propositions with citation of authorities, which may have more or less general application; but the particular vice of the instruction relied on is not pointed out. One particular in which the instruction seems to us to be erroneous is that it assumes evidence of a contract or agreement between plaintiffs and defendant, that plaintiffs should quit the work, and that defendant would pay for the work done according to the estimate of the engineers to be appointed. But that was not the whole of the contract according to plaintiffs' evidence. That contract involved a continuation of the work by Dillon, which he acknowledges he declined to do. Defendant proves, and it is not denied, that their general manager proposed to pay plaintiffs according to the estimates of the engineers of July 13, 1908, but the plaintiffs would not accept this settlement, as Dillon had agreed. Moreover, the instruction assumes that defendant was to pay plaintiffs what the work was reasonably worth or what the jury might think was just and fair, and not the amount according to the estimate of the engineers as agreed. Another thing that strikes us about this instruction is that it assumes the defendant consented unconditionally to plaintiffs' stopping the work. There is no such evidence. For these reasons we think this instruction in the form given was erroneous.

The court declined to give instructions Nos. 1, 3, 6, 8, 9, and 10, proposed by defendant. We have examined these instructions and are of opinion they were rightfully rejected. Instructions Nos. 2, 4, 5, and 7, given on behalf of the defendant, sufficiently covered the law on its theory of the case, substantially in accordance with the legal principles applicable and enunciated herein.

For the errors, however, pointed out in the instruction

given by the court on its own motion, and because we are of opinion that the verdict is contrary to the evidence, the judgment below will be reversed, the verdict set aside, and the defendant awarded a new trial.

*Reversed, verdict set aside, and new trial awarded.*