## Shinn *et al.* *versus* Bodine *et al.*

1. A contract was to deliver 800 tons of coal at $6 per ton, "coal to be delivered on board vessels as sent for during months of August and September. Should we be unable to get all away by close of September, it is understood you can keep over on wharf or bring down later, as you prefer, as much as 300 tons of above quantity." This was an entire contract, and payment was to be made on its fulfilment; the purchaser was not bound to pay for each cargo on its delivery.

2. The entirety of a contract depends on the intention of the parties, not on the divisibility of the subject.

3. The mode of measuring the price of the subject of an entire contract will not change the effect of the agreement.

January 11th 1869.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Certificate from the Court of Nisi Prius, No. 322, to January Term 1866.

This was an action of assumpsit, brought to January Term 1866, by Frank L. Bodine and J. Minor Bodine, trading as F. & J. Bodine, against Charles H. Shinn and William C. Shinn, trading as Charles H. Shinn & Son.

The cause of action alleged in the plaintiffs' declaration was that the defendants had refused to deliver 800 tons of coal, as they had contracted to do.   The contract was contained in the following letter:—

"128 So. Front St., July 31st 1865.
"Messrs. C. H. Shinn & Co.

"Gentlemen—We accept your offer for eight hundred (800) tons Greenwood Co's coal, broken size, at six (12½–100ths) dollars per ton, 2240 lbs.   Coal to be delivered on board vessels as sent. for during months of August and September; to be of as good quality as we have heretofore received.   Should we be unable to get all away by close of September, it is understood you can keep over on wharf or bring down later, as you prefer, as much as 300 tons of above quantity.

"Yours truly,      "F. & J. BODINE."

Under this contract the defendants delivered one cargo of coal. The plaintiffs refused to pay for that till the whole was delivered, and the defendants refused to complete the contract.

The defendants asked the court to affirm this point:—

"If the jury believes the defendants refused to pay for the cargo of coal delivered and received August 26th 1865, until the whole quantity called for by the contract was delivered, they were in such default as to excuse the defendants from further performance under that contract, and the plaintiffs cannot recover damages for non-delivery of the residue."

The court refused so to charge the jury, but directed a verdict for the plaintiffs, reserving the point. The jury found a verdict for the plaintiffs for $2838.39; on which judgment was afterwards entered on the reserved point, Mr. Justice Sharswood delivering the following opinion:—

"This is an action of assumpsit on a contract which is contained in a letter of July 31st 1865, from the plaintiffs to the defendants: 'We accept your offer for eight hundred tons Greenwood Co.'s coal, broken size, at six $12\frac{1}{2}$–100ths dollars per ton, 2240 lbs., coal to be delivered on board vessels as sent for during months of August and September, and to be of as good quality as we have heretofore received. Should we be unable to get all away by close of September, it is understood you can keep over on wharf, or bring down later, as you prefer, as much as 300 tons of above quantity.' One cargo was sent, and afterwards, upon another being required by the plaintiffs, the defendants demanded payment for the cargo already delivered, and upon plaintiffs refusing to pay, they refused to go on and complete the contract.

"The question which I reserved on the trial is, was this an entire contract? It was for a certain ascertained amount to be delivered within a fixed time, with a certain specified exception. It was evidently to be delivered in parts, on board vessels, as sent for by plaintiffs. What would have been simpler than to have said each cargo to be paid for on delivery, if that had been the intention of the parties? The plaintiffs, to carry on their works as manufacturers of glass, were required to have their full supply of coal assured to them for a certain period. The price of coal had advanced, and when the defendants demanded payment of the cargo before sent as a condition precedent to their sending any now, the plaintiffs had a right, it seems to me, both in law and morals to say, 'No; we hold that as security for your fulfilling the residue of the contract.' As the agreement is in writing, it is to be construed by the court. I see no one word in it which tends to destroy its entirety. The defendants' counsel has cited to me some cases in England, but I do not think they apply. Mavor *v.* Pyne, 2 C. & P. 91, was an action upon a subscription to a work published in numbers, and though there is undoubtedly an opinion expressed by Best, C. J., that besides the entire contract, there was a subordinate contract—an understanding that each number was to be paid for on delivery—yet the fact was, the defendant had refused to take the whole, 'when the first contract was broken off.' Said the Chief Justice: 'When the defendant said, 'I will not take the whole,' I think an implied contract was raised which may be enforced in this form of action.' And the plaintiff had a verdict for the numbers delivered.

"If there be in this case—as C. J. Best thought there was in that—two contracts; first, a principal one, which was entire, and

[Shinn *v.* Bodine.]

second, a subordinate one, which was several, it does not affect the right of the plaintiffs here. They are suing on the first or entire contract. The defendants, it appears, have already sued and recovered, in New Jersey, on the subordinate one. Mavor *v.* Pyne was but a Nisi Prius decision, and on the motion for a new trial the question was not mooted. This was the case on which the defendants' counsel placed his main reliance. His other cases were Bloxam *v.* Sanders, 4 B. & C. 941; Withers *v.* Reynolds, 2 B. & Ad. 882; Roberts *v.* Havelock, 3 Id. 404. In Withers *v.* Reynolds the agreement in writing was to pay '33s. per load for each load of straw,' which was construed to make the contract several; and Roberts *v.* Havelock was the case of a mechanic who simply undertook to repair a ship. There was nothing in the case, as the court held, amounting to a contract to do the whole repairs and make no demand till they were completed. On the other side, I will not refer to the cases in Massachusetts, Davis *v.* Maxwell, 12 Metcalf 286, and the authorities cited there. We have decisions of our own: Shaw *v.* The Turnpike Co., 2 Pa. Rep. 454. In that case the plaintiff had contracted to make a turnpike road for defendants, fifty feet wide, twenty-one feet to be bedded in stone, and the residue to be cleared, and a summer road made on each side. He bedded the twenty-one feet, the company accepted it, and the governor licensed it. It was held to be an entire contract, and that it could not be apportioned. Harris *v.* Liggett, 1 W. & S. 301, was an agreement 'to haul the wood to be coaled the next season,' and it was to be paid for 'at the rate of 12½ cents per cord.' It was held to be entire, and not apportionable.

"If this be the law of the case, it is unnecessary that I should consider the second reason for a new trial, viz.: 'that there was error in not instructing the jury as requested by defendants in their written point submitted.' This was, that 'if the jury believe that plaintiffs refused to pay for the cargo of coal delivered and received August 26th 1865, until the whole quantity called for by the contract was delivered, they were in such default as to excuse the defendants from further performance under that contract, and the plaintiff cannot recover damages for non-delivery of the residue.' This would be so according to Withers *v.* Reynolds, if the contract was not one entire, but a several contract; but it would not be so if, as according to C. J. Best, there were two contracts, a superior and a subordinate one. If the contract was entire, however, it is plain that the point submitted had no applicability."

The defendants removed the case to the court in banc, and assigned for error the refusal to affirm their points and directing a verdict for the plaintiffs.

[Shinn v. Bodine.]

*R. C. McMurtrie*, for plaintiffs in error.—This was the sale of a large quantity of coal with a price fixed by parcels, deliverable in parcels at the option of the purchaser, with a long time in which to use the option; the seller not being entitled to compel acceptance till the time expired, and no time of payment expressed, the implication was that payment should be made on delivery of each cargo.

While a contract is *in fieri*, non-performance by one party discharges the other from further performance: Wilmshurst *v.* Bowker, 2 Man. & Granger 792; Reybold *v.* Voorhees, 6 Casey 116. Silence as to the time of payment imports that it shall be made on delivery: Chitty on Contracts 375, and Bloxam *v.* Sanders, 4 Barn. & Cress. 941; Welsh *v.* Bull, 8 Casey 17; Lester *v.* McDowell, 6 Harris 92; Withers *v.* Reynolds, 2 Barn. & Adol. 882; Roberts *v.* Havelock, 3 Id. 404; Mavor *v.* Pyne, 3 Car. & Payne 93.

*S. C. Perkins* (with whom was *S. H. Perkins*), for defendants in error.—It does not necessarily follow, that where the subject-matter of a contract of sale is from its character divisible or separable into portions each *per se* valuable, the contract is therefore not an entire contract: Shaw *v.* Badger, 12 S. & R. 275; Shaw *v.* The Turnpike Company, 2 Pa. Rep. 454; Harris *v.* Ligget, 1 W. & S. 301; Clark *v.* Baker, 5 Metcalf 452.

The opinion of the court was delivered, January 21st 1869, by

AGNEW, J.—The entirety of a contract depends upon the intention of the parties and not on the divisibility of the subject. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract, when that is shown. Nor will the mode of measuring the price, as by the bushel, ton or pound, change the effect of the agreement when it is entire. If a party should agree to deliver one bullock, at a certain price per pound, and on a certain day, no one would doubt the entirety of the contract, notwithstanding the mode of measuring the price. But the indivisibility of the contract would not be less, if he had contracted in the same terms to deliver two. Precisely the same rule would apply to an agreement to deliver 100 bushels of wheat by a certain day for a certain price per bushel, and the entirety of the contract would not be disproved if the agreement required it to be delivered by the wagon-load. Just so, here, the contract for the delivery of 800 tons of coal at a stated price per ton, is in language clearly denoting an entire contract for that much coal, the price measured by the ton not indicating any intent to sever in payment. Nor does the provision for delivery on board vessels sent for the coal during August and September, indicate an intent

[Shinn *v.* Bodine.]

to sever the payment, for delivery by the vessel-load was a necessity growing out of the quantity to be delivered and the distance of transportation. And the last clause was but a provision against inability to send for all the coal in the prescribed time, and fails to indicate any intent to sever the payment. No part of the agreement disclosing an intent to sever in the payment, the legal presumption drawn from the entire contract to deliver 800 tons of coal remains, that it was to be paid for on delivery.

On authority the case is not less clear: Shaw *v.* Badger, 12 S. & R. 275; Shaw *v.* Turnpike Co., 2 Penna. R. 454; Harris *v.* Ligget, 1 W. & S. 301; Davis *v.* Maxwell, 12 Metcalf 286. The authorities cited by the plaintiff in error are all distinguishable. Lester *v.* McDowell, 6 Harris 92, was a question in replevin, of title dependent on delivery. The same question arose in Welsh *v.* Bull, 8 Casey 13, the action there being trespass. In Reybold *v.* Voorhees, 6 Casey 116, the contract clearly indicated a severance in the payments. Mavor *v.* Pyne, 2 Car. & P. 91, was put on the ground of the refusal of the purchaser to take the undelivered numbers of the work subscribed for. The idea thrown out by Best, C. J., that though the contract was entire for the whole work in numbers, yet there was a subordinate contract to pay for each number on delivery, is plainly founded on what he understood to be a custom of the trade. The contract in Withers *v.* Reynolds, 2 Barn. & Adol. 882, was for no specific quantity of straw, but a running agreement for the delivery of wheat straw for the use of the stables, until a certain day, at a specified price per load, with an agreement to pay the price for each load. The intention to sever the payment was clear. The other English cases cited need no notice more than to say they are clearly distinguishable from this. We are of opinion that the contract here for the delivery of 800 tons of coal was entire, and payment of the price waited on the fulfilment. It was, therefore, not in the power of the defendants below to demand payment on each vessel-load, and to rescind on a refusal to pay in this mode.

Judgment affirmed.