# McKeefry *v.* United States Radiator Company, Appellant.

*Contract—Several and entire contract—Intention—Evidence.*

The entirety of a contract depends upon the intention of the parties and not upon the divisibility of the subject. The several nature of the latter may often assist in determining the intention, but will not overcome the intention to make an entire contract when that is shown; nor will the mode of measuring the price, as by the bushel, ton or pound, change the effect of the agreement, even in entire contracts, from agreeing to partial payments, pending the full performance.

In an action to recover the difference between the contract and market price of pig iron which defendant refused to accept, it appeared that defendant by an order in writing directed the plaintiff to forward 200 tons "at $21.00 per gross ton, Time of delivery; one car per week, July and August." The shipments began in August, and it appeared that they corresponded with the orders given by the defendant company. The market price of pig iron decreased, and in December the defendant canceled its order, and the plaintiff was compelled to sell the undelivered balance aggregating seventy-two tons in the open market, at a loss. The various shipments were paid for as they were received. *Held,* that the court committed no error in instructing the jury that the contract was an entire contract.

264 McKEEFRY *v.* U. S. RADIATOR CO., Appellant.

Statement of Facts—Charge of Court below. [31 Pa. Superior Ct.

Argued April 18, 1906. Appeal, No. 44, April T., 1906, by defendant, from judgment of C. P. Westmoreland Co., May T., 1904, No. 223, on verdict for plaintiff in case of McKeefry & Company *v.* United States Radiator Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Assumpsit to recover for a breach of contract. Before Mc-CONNELL, J.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows:

Looking at all these sources of information we believe, and therefore instruct you, that this is an entire contract and was so designed to be by the parties, and that the manner of paying will not destroy the entirety of the contract. As was said in the case already quoted from: " there is nothing to prevent parties, even in entire contracts, from agreeing to partial payments pending the full performance." So that the partial payments in this case we think will not destroy the entirety of the contract as the words and actions of the parties themselves made it. Now, then, to what does this bring us? When we have reached the conclusion that it is an entire contract, we must then understand how it becomes applicable to the issue that we have to dispose of here. If the plaintiff had an entire contract and he has performed his part of it, he is entitled to have the profits that he would have made from full performance. If the defendant in this case did not allow him to ship what would have completed this contract and he did not ship that balance, he of course would still have in his possession those goods. But they may not have been worth as much to him,—he may not have been able to dispose of them in the market for as good a price as this contract would have given him. He is entitled to have from the defendant, if his contention is correct, the profit that would have come to him under this contract. That profit in part would be measured by the price named here, and if the market price at the time he was prevented from fulfilling it was lower than that, why of course what he would have undelivered would not afford him as much money in the market as he would have got from the defendant

in this case.  The defendant would be required to make up the difference.  The plaintiff has what the market value of these goods was; he has that in his pocket.  So that he cannot claim from this defendant the full price of the undelivered tons of iron.  He has part of that price in his pocket, because he was able to dispose,—presumably so,—he was able to dispose of this undelivered property.  But the defendant would still owe him the difference between that market price and the price agreed upon in the contract.  Whether the plaintiff has made out his contention in that regard depends on a number of considerations and you will have to solve that problem from the evidence in the case, and we now come to that part of it.  [1]

Defendant presented these points:

1.  The defendant respectfully asks the court to instruct having been based on the contract of March 13, 1903, calling for the specific delivery of iron, one car per week during July and August, and the uncontradicted testimony showing that no shipment was made or attempted to be made until after the middle of July, and the plaintiff having averred in his statement of claim that his loss was due for the iron which had been manufactured prior to June 30, and set apart for the defendant and held until December 21, 1903, and the evidence of the plaintiff having been that the iron for which damage is claimed was not manufactured until December, 1903, we instruct you that the plaintiff has failed to support his statement by the proofs in the case and your verdict must be for the defendant. *Answer :* From what we have already said to you in the general charge it is apparent that we cannot affirm this point and it is accordingly refused.  There are too many things involved in this case for the court to summarily dispose of the case in accordance with this point.  Some of these things have to be passed on by the jury.  [2]

2.  That by the contract as sued upon, time is made of the essence of the contract, and the contract being a severable contract, no burden was on the defendant company to notify the plaintiff company of any cancellation of iron which was not shipped during the first three weeks in July, 1903, and that by the testimony of the plaintiff all the iron that was delivered during the month of August and for the last week of July,

1903, was accepted and paid for by the defendant company, and therefore your verdict must be for the defendant. *Answer:* That we also refuse. We have fully discussed the question of whether it is or is not a severable contract as is alleged in this point, and have already said to you in the general charge that we regard it as an entire contract. The point is therefore refused. [3]

4. Under all the evidence in the case your verdict must be for the defendant. *Answer :* That is refused. The question of whether your verdict should be for the defendant is one that must be submitted to the jury and we cannot dispose of it as a question of law and we refer that matter to you. You are to determine that under the direction that we have already given you. [4]

Verdict and judgment for plaintiff for $589.45. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*H. E. Marker,* with him *C. B. Hollingsworth,* for appellant. —The contract was separable : Lucesco Oil Co. v. Brewer, 66 Pa. 351 ; Morgan v. McKee, 77 Pa. 228 ; Scott v. Kittanning Coal Co., 89 Pa. 231 ; West Republic Mining Co. v. Jones, 108 Pa. 55 ; Fullmer v. Poust, 155 Pa. 275 ; Gill v. Johnston Lumber Co., 151 Pa. 534 ; Rugg v. Moore, 110 Pa. 236 ; Ritchie v. Atkinson, 10 East, 295.

*Edward E. Robbins,* with him *John E. Kunkle,* for appellees, cited as to the entirety of the contract: Shinn v. Bodin, 60 Pa. 182 ; Easton v. Jones, 193 Pa. 147 ; Quigley v. DeHaas, 82 Pa. 267 ; Shires v. O'Connor, 4 Pa. Superior Ct. 465 ; Eller v. Cambridge Springs Co., 18 Pa. Superior Ct. 44.

OPINION BY ORLADY, J., June 30, 1906 :

On March 13, 1903, the defendant company gave the plaintiff an order in writing, as follows : " Please forward to us at West Newton, via B. & O. two hundred (200) tons Seneca, at $21.00 per gross ton. Time of delivery ; One car per week, July and August." This was accepted, and filled in part by

the delivery of carload lots of pig iron of the designated brand. The shipments began in August, and from the correspondence between the parties, it is quite apparent that the time of delivery of the subsequent shipments corresponded with the orders given by the defendant company. The market price of that grade of pig iron decreased from the date when the order was given, until the December following when the defendant conceled its order, and later the plaintiff sold in open market, at the rate of $13.00 per ton, the balance of the undelivered iron, which aggregated seventy-two tons.

This action was brought to recover the difference between the contract and market price, and the sole defense was that the contract was severable and not entire. The rule of the law, as laid down in Shinn v. Bodine, 60 Pa. 182, and followed in many later cases, is that the entirety of the contract depends upon the intention of the parties and not on the divisibility of the subject. The several nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown; nor will the mode of measuring the price, as by the bushel, ton or pound, change the effect of the agreement, even in entire contracts, from agreeing to partial payments, pending the full performance, and that is what was done in this case : Easton v. Jones, 193 Pa. 149; Poland Ice Co. v. Connor, 24 Superior Ct. 493; Barnett v. Becker, 25 Superior Ct. 22.

A member of the plaintiff company testified that they manufactured the pig iron and that it was ready for shipment during July and the following months, until the contract was canceled. The reason for the change of the date when the material was delivered and the sufficiency of that proof raised questions of fact which could only be settled by the jury and they were fully and fairly left to that tribunal. The defendant's first and second points were fully covered in the general charge, and were properly refused, and we see nothing in the record to warrant another trial.

The assignments of error are overruled and the judgment is affirmed.