## Smith's Estate.

*Contract—Entire and severable contracts—Partial payments—Personal services—Physician and patient.*

Where a patient agrees in writing to pay his physician "five thousand dollars for his treatment of locomotor ataxia, divided into payments as follows: Five hundred dollars every three months till paid," and the patient takes the treatment for twenty months and then dies, the physician is entitled to recover the whole of the unpaid portion of the $5,000. Such a contract is not against public policy. It is an entire contract; and the court will not apply to it the principle that in contracts for personal services it is an implied condition that the death of either party dissolves the contract.

Argued Oct. 13, 1914. Appeal, No. 71, Oct. T., 1914, by W. Lewis Tallman, from decree of O. C. Phila. Co., July T., 1911, No. 82, sustaining exceptions to adjudication in Estate of Henry Hudson Smith, deceased. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Exceptions to the adjudication of GUMMEY, J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to the adjudication.

*Owen J. Roberts*, of *Roberts, Montgomery & McKeehan*, for appellant.—The contract is entire: Easton v. Jones, 193 Pa. 147; Eller v. Cambridge Springs Co., 18 Pa. Superior Ct. 44; Kelley Brick Co. v. Clay Product Supply Co., 32 Pa. Superior Ct. 408; Lucesco Oil Co. v. Brewer, 66 Pa. 351.

The contract is a fair one: Thompson v. Stevens, 71 Pa. 161; Cottrell's App., 4 W. N. C. 237; Harper's Est., 196 Pa. 137; Yeager's Est., 18 Pa. Dist. Rep. 980; Whilt's Est., 20 Pa. Dist. Rep. 1097; MacInnies' Est., 21 Pa. Dist. Rep. 373.

The act of God should not modify the agreement: Dickinson v. Calahan, 19 Pa. 227; Blakely v. Sousa, 197 Pa. 305; White v. Com., 39 Pa. 167; Billing's App., 106 Pa. 558; Stumpf's App., 116 Pa. 33; Furbush's Est., 16 Pa. Dist. Rep. 205; Drummond v. Crane, 159 Mass. 577; Harrison v. Conlan, 10 Allen (Mass.), 85; Tasker v. Shepherd, 6 Hurlstone & Norman, 575; Yerrington v. Greene, 7 R. I. 589; Stewart v. Loring, 5 Allen (Mass.), 306.

*C. Berkeley Taylor*, for appellee.—A contract whereby the promisor is to perform certain services of a personal nature, and such as cannot be performed by his assignee or his successors, is discharged by the death of either party, whether of the party who was to perform such services or of the party for whom such services were to be performed: Harrison v. Conlan, 10 Allen (Mass.), 85; Tasker v. Shepherd, 6 Hurlston & Norman, 575; Yerring v. Greene, 7 R. I. 589.

The contract does not provide for performance after

death. No representatives are mentioned. In fact performance would not be possible under those circumstances: Dickinson v. Callahan, 19 Pa. 227; Blakely v. Sousa, 197 Pa. 305.

OPINION BY RICE, P. J., February 24, 1915:

The appellant presented at the audit of the decedent's estate his claim for balance due for professional services, amounting to ·$2,625. The claim was based upon the following contract:

"I agree to pay Dr. W. L. Tallman Five Thousand Dollars for his treatment of Locomotor Ataxia. Divided into payments as follows: Five Hundred Dollars every three months till paid.

                    ·Chicago, December 1st, 09.
                         H. H. Smith,
                           1712 Pine St.,
                              Phila.,
                                Pa."

The auditing judge found the following facts: that decedent consulted Dr. Tallman of his own volition, and in December, 1909, went to Chicago for the purpose of taking such treatment as Dr. Tallman might prescribe; that upon returning home decedent, aided by correspondence, followed claimant's direction until February, 1910, when he visited claimant's office in San Antonio, Texas, where he remained until the middle of April; that for the purpose of continuing under the care of claimant, the decedent again visited Chicago in June, 1910, and again in December, 1910, and again in March, 1911, and at no time during the twenty months that he was taking the treatment prescribed by claimant does it appear that decedent expressed a desire to terminate the contract; nor does it appear that he did not intend to make payment fully. The auditing judge allowed the claim. Whereupon the executors took exceptions, which the court in banc sustained and made a decree reducing the award to $836.10, which was the balance, under the

installment payments as set forth in the contract, up to the date of the decedent's death. The claimant thereupon took this appeal.

A very important thing to be considered in the construction of this contract is that it does not name any period of time during which the treatment was to continue. Nor can the fixing of such definite period be implied by referring to any known standard whereby it can·be determined with reasonable certainty when the disease for which the treatment was to be given would terminate by cure or death. Reference is made by the court to the letters that passed between the claimant and the decedent both before and after the contract was made and performance by the former had been entered on, as throwing light on the question. But these letters, whether taken by themselves or in connection with the oral testimony of Dr. Nicholson, who was associated with the claimant in practice, do not show that the parties had in mind any definite number of weeks, months, or years during which the disease would continue or treatment for it would be given. The most they establish, or that the court finds they establish, is (to quote the language of the court's opinion) "that it was in his" (claimant's) "mind that the 'treatment' would probably continue for three years." It is argued that, applying the general principles upon which the appellate courts act in reviewing findings of fact by the orphans' court, this finding ought not to be set aside unless for grave reasons. We are not disposed to set aside the finding. The difficulty we have is with the conclusion of law the court bases on it, namely, that the claimant's performance was not complete. This, it seems to us, is a non sequitur. It might well be that one of the parties, or even both of them, considered it "probable" the treatment would continue three years. Yet this belief would fall far short of establishing an agreement that the treatment should continue for three years and no longer. The nature of the disease made it un-

certain how long the treatment would be required or could appropriately be given. It might be more than three years or it might be less. It is entirely reasonable to suppose that the parties intentionally refrained from stipulating as to the time during which the claimant was to treat the patient, because of this very uncertainty. True, as has been suggested, if he died within a short time after the contract was made, $5,000 would have been a grossly unreasonable fee. But it is to be noticed, on the other hand, if he was cured within the same time, or so far cured that no further treatment was needed, the fee might be entirely reasonable; or, if he had lived years after the time for payment had expired, and the physician had gone on treating him, as he would have been bound to do, the fee might have been grossly inadequate. If the parties saw fit, with these contingencies in view, to contract for payment of a gross sum, rather than to leave the compensation to be measured by the value of the services rendered, they could so contract, and it is not for us to say that they acted unreasonably. Construing the contract in the light of the attendant circumstances, namely, the nature of the disease to be treated, the age and condition of the patient, and giving due consideration to the conduct of the parties under it, we think it means, not that the claimant was to give a single treatment, or any definite number of treatments, or treatments during the period fixed for payment, but that he should treat the patient's special disease so long as the claimant's treatment of it should be required and could appropriately be given, and for so doing he should be paid $5,000. There is not the slightest evidence that the patient was imposed upon in making this contract. Indeed, the evidence shows that he sought out the claimant and engaged his services after examination and due deliberation. The learned auditing judge well says, it must be presumed, and, we add, his letters show, that he was a man of intelligence, with full mental capacity, who knew what he was doing

when he signed the contract, and the fact that he continued to act under. it until his death is conclusive evidence that he was satisfied with its terms. Whether it is wise and according to the highest standards of professional ethics, for physician and patient to enter into such a contract, are matters upon which no expression of opinion from us is called for. But it cannot be said that they contravened any rule of public policy in making it. Why then should it not be enforced?

Reference is made by the learned court to the general rule or principle that in contracts for personal services it is an implied condition that the death of either party dissolves the contract. This principle might be applicable here if the claimant had contracted to cure the patient, or had contracted to treat him for a definite period of time. But he did not so contract. What he undertook to do was to give the patient his special treatment, impliedly, so long as that. treatment should be required and could appropriately be given. The evidence shows that he fully complied with that undertaking. It is not a case where complete performance was prevented by the death of the patient, but a case where the party contracting to render personal services has completely performed his part of the contract. Of course. the death of the patient discharged the claimant from the obligation to do more, and, in that sense, dissolved the contract, but did not dissolve it so far as the obligation of the other party was concerned.

The distinction itself between entire and severable contracts is based on the difference in intent. As said in Shinn v. Bodine, 60 Pa. 182, "the entirety of a contract depends on the intention of the parties, and not on the divisibility of the subject. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown:" Easten v. Jones, 193 Pa. 147. The splitting up of the consideration into partial payments is in no way inconsistent with the conclusion that this

contract was entire: Kelley Brick Co. v. Clay Product Supply Co., 32 Pa. Superior Ct. 408. We are of opinion that this was an entire contract, and that there was such performance as entitled the claimant to payment of the unpaid balance of the sum agreed upon.

The decree is reversed so far as it relates to this claim, and the record is remitted to the orphans' court with direction to enter decree in accordance with the findings and opinion of the auditing judge; the costs of this appeal to be paid out of the estate.