Opinion by
Ervin, J.,
The plaintiff, Harvey E. Thorpe, specialist in ophthalmology, surgery and care and treatment of diseases of the eye, sued the defendants, Fannie Schoenbrun and Adolph Schoenbrun, her husband, for medical services rendered for the wife-defendant between July 7,. 1952 through July 19, 1954, the suit having been commenced on July 12, 1960. The defendants filed an answer averring that the charges were not fair, reasonable or proper. They, also, under new matter, pleaded the statute of limitations in full bar of the plaintiffs claim. The plaintiff, in a reply to the new matter, averred that the last medical treatment and services were performed on July 19, 1954 and “that said medical treatment was an essential, necessary and integral part of the full, entire and continuous services required by the Defendant, *377 Fannie Schoenbrun . . . and that the relation of Doctor and patient was not terminated until on or after the date of last medical treatment which was, as aforestated, July 19,1954.”
In the charge to the jury the trial judge said: “. . . if you believe the plaintiff’s story that this was a continuing contract, that he had not dismissed this patient, then the statute would not apply and you would find a certain verdict for the plaintiff.” He further said: “. . . I have decided it is a question of fact for you, the Jury, to decide as to whether the statute of limitations should be applied to this case.”
The trial judge left to the jury the question of the reasonable value of the services rendered to the defendant by the plaintiff.
The jury found a verdict for the plaintiff in the sum of $1,250.00 (without interest). After post-trial motions were disposed of by the court en banc, judgment was entered on the verdict. The defendants appealed.
The sole question presented by this appeal is whether the contract is severable or whether it was an entire contract continuing throughout the rendition of all of the medical services. The jury having found for the plaintiff, we must on this appeal consider that it found the contract to be entire. This finding is- binding upon us if there was credible evidence to support it and the question was properly submitted to the jury: 2 F.L.E., Appeals §433.
The nature of the contract for the employment' of the doctor’s services was before the jury on the disputed testimony, which was a question of fact for its determination: Vanhorn v. Scott, 28 Pa. 316.
“The statute of limitations begins to run in the case of contracts when the action accrues or arises, which is when there is an existing right to sue forthwith on the breach of the contract.” 22 P.L.E., Limitation of Actions §54.
*378 “In general, the statute of limitations does not run against a contractual cause of action which is a continuing one. On a continuing contract which is entire, the statute of limitations begins "to run' only from the time when the breach occurs or the contract is in some way terminated. The test of continuity, so as to take the case out of the operation of the statute of limitations, is to be determined by the answer to the question whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts.
“If services are rendered under an agreement which does not fix any certain time for payment or for the termination of the services, the contract will be treated as continuous, and the statute of limitations does not begin to run until the termination of the contractual relationship between the parties.” 22 P.L.E., Limitation of Actions §56.
In our judgment, the evidence was sufficient to support the jury’s finding and the question Avas properly submitted to it for determination.
The evidence shows that the plaintiff first saw Mrs. Schoenbrun, the wife-defendant, as a patient on July 31, 1934 and variously thereafter until her final visit to his office on July 19, 1954. Plaintiff provided the overall care for her eyes, i.e., prescribing glasses for near-sightedness, correction of poor vision, cataract operation for left eye in 1951, cataract operation for right eye in 1953, infection in right and then left eye, glaucoma first in right eye and then in left eye, and cupping of the left optic nerve.
For services prior to July 7, 1952 the plaintiff had billed defendants and had been paid, the last payment being June 28, 1951 for a bill of $1,500.00 for left eye cataract operation, reduced by agreement of parties to $1,250.00. On July 7, 1952 defendant had an infection *379 in her right eye and the cataract in her right eye had progressed and on July 9, 1952 she had an infection in the eyelid of her left eye. The doctor testified that on November 17, 1952 he discovered that she was having an early case of glaucoma in her left eye and he prescribed pilocarpine drops in both eyes because glaucoma is a disease that usually affects both eyes. The doctor testified in cross-examination as follows: “Q. You thought, Doctor, on November 17, 1952 you saw evidence of glaucoma? A. I saw cupping of the left optic nerve, that is the eye that I first operated for cataract and that was the first chance that I had to see that optic nerve for quite sometime and it had not been cupped before. I interpreted that as early evidence of glaucoma. I made a sketch of that.” He also testified as follows: “A. Yes, I have a note here which I failed to notice yesterday, written in the same ink and on the same sheet and dated July 7, 1952 that the pressure of the right eye was one plus, pressure of left eye was normal as determining measurement with my fingers. Q. What does the one plus on the right eye indicate to you? A. It indicates to me that there is probably glaucoma present.” He also testified as follows : “Q. Tell us the connection of this treatment with the preceding treatment? A. It was part of the management of this case, it was part of the continuous management of this case as it had begun back with the surgery in 1953, rather on November 17, 1952 we discovered the glaucoma, we had been watching the cataract previous to that but found no evidence of glaucoma until November 17, 1952. Q. So all treatments then interrelated, is that true, Doctor? A. Yes.”
The doctor also testified that he never discharged the patient but that he never saw her after July 19, 1954 although he fixed a subsequent date for her to again see him but she never did.
*380 The doctor testified that you cannot tell, when a case is involved with complications, what the entire cost will be and he testified that the bill of $1,655.00 is a progressive amount which increases with the number of visits made. The first bill was rendered on July 1, 1953 covering care dating back from July 9, 1952 and was in the amount of $1,600.00, it having covered the operation of April 16, 1953 when the cataract on the right eye was removed. A number of bills were sent thereafter, including the amounts for the additional visits, until the final amount aggregated $1,655.00. The doctor testified that when glaucoma occurs in one eye, the other eye is a candidate for the same disease. A reading of the evidence also reveals that glaucoma is a disease of the eye which requires continuous observation and treatment in order to keep it in control and that it is a disease of the eye which is never completely cured.
We are further convinced that the evidence is sufficient to show, from all the surrounding circumstances, that the doctor was employed in this case for the overall purpose of preserving the sight of the wife-defendant’s eyes and preventing blindness. Inherent in this employment was an extended period of continuous services which were interdependent and related. We believe that the jury could well have found from this evidence that the intention of the defendants was to employ the doctor for the handling of the wife-defendant’s case until the required care and treatment had been rendered and such was the nature of the employment that no intention could have been had by the parties to a separate contract for each independent item of service or visit. The entirety of a contract depends upon the intention of the parties and not upon the divisibility of the subject: McKeefry v. U. S. Radiator Co., 31 Pa. Superior Ct. 263.
We also believe the jury could well have found that the doctor-patient relationship was not terminated un *381 til sometime after August 30, 1954, and that the contract had not been terminated more than six years prior to the time the suit was commenced.
The evidence in this case also reveals that “if a patient has glaucoma, it usually' happens for a lifetime.” The doctor also testified that on July 7, 1952 he noted a one plus pressure on the-right eye and that indicated to him “that there is probably glaucoma present.” He continued to treat the glaucoma condition from that time until the last visit of July 19, 1954 and undoubtedly would have continued to treat it further had the patient not terminated the relationship.
In Rabben v. Steinberg, 187 Pa. Superior Ct. 28, 31, 142 A. 2d 400, we set forth a line of cases in Pennsylvania which indicate that the statute of limitations does not begin to run against the claim of an attorney for conducting a suit until the end of his services.
In McKeefry v. U. S. Radiator Co., supra, at page 267, we stated: “The rule of the law, as laid down in Shinn v. Bodine, 60 Pa. 182, and followed in many later cases, is that the entirety of the contract depends upon the intention of the parties and not on the divisibility of the subject. The several nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown; nor will the mode of measuring the price, as by the bushel, ton or pound, change the effect of the agreement, even in entire contracts, from agreeing to partial payments, pending the full performance, and that is what was done in this case: Easton v. Jones, 193 Pa. 149; Poland Ice Co. v. Connor, 24 Superior Ct. 493; Barnett v. Becker, 25 Superior Ct. 22.”
We can see no essential difference between the claim of an attorney and the claim , of a doctor, as related to the question of whether the services were continuing or severable. ■ ; -
*382 The evidence in this case clearly reveals that the doctor was treating both eyes for infections, cataracts and glaucoma. The glaucoma was a disease which the jury may well have found could have continued for the remainder of the patient’s life. It would require continuous observation and treatment. It greatly resembles the situation where an attorney commences a lawsuit for a client which continues for many years until it has finally been terminated. Of course, the parties in this case did not specifically agree that the contract was to be either continuous or severable. The circumstantial evidence, in our judgment, however, was sufficient to permit the finding which the jury made that the parties really intended a continuous contract of service to preserve the eyesight of both eyes.
Judgment affirmed.