## DeLuca v. Mountain View School District

*Peter J. O'Brien*, for plaintiffs.
*Audrey R. Kelly*, of *Kelly & Kelly*, for defendant.

O'MALLEY, *P. J.*, December 14, 1974—

## HISTORY OF THE CASE

This action in assumpsit was brought by 22 teachers against their employer school district for damages allegedly sustained as a result of defendant's misapplication of mandatory salary schedules established by the General Assembly of our Commonwealth. It was commenced by the filing of a praecipe for writ of summons on June 26, 1972.

Plaintiffs have moved for summary judgment pursuant to Pa.R.C.P. 1035. This court has before it on consideration of that motion plaintiffs' complaint, defendant's answer and new matter, a reply to new matter, extensive answers by defendant to plaintiffs' interrogatories, a position on facts from

each side, and a brief from each side. As a result of all these papers, there remains no controversy as to the amount of money actually paid to each teacher for the years in question, and the only ultimate issue is one of law, namely the amount of money mandated by the legislature to be paid to each plaintiff. Therefore, this is an appropriate case for disposition by summary judgment.

## FACTUAL BACKGROUND

Plaintiffs are seeking adjustments of their salaries dating from the 1965-1966 school year, which was the first year to which the legislature applied its Act 405 of December 9, 1965, P.L. 1057, 24 P.S. §11-1142. Act 405 required a determination for each teacher of "the step . . . attained by agreement or by years of experience within the school district whichever is higher," and an application of that determination to the minimum schedule of salaries mandated by the legislature. For the school year 1968-1969, Act 405 was superseded by Act 96 of June 12, 1968, P.L. 192, 24 P.S. §11-1142, which again referred to "the step . . . attained by years of experience within the school district each step after step 1 constituting one year of service."

For the school year 1967-1968, defendant, Mountain View School District, adopted a local salary schedule which was uniformly $800 higher than the mandated minimum schedule of Act 405. In following years Mountain View promulgated local salary schedules which for the most part were $300 higher than the mandated minimum schedule of Act 96, although the 1971-1972 schedule appears to be some $600 above the minimum. In any event, this case involves no prob-

lem with the validity of the local schedules since 1967-1968; it is the determination of the steps thereunder which is at issue for those years.

Simultaneously with the adoption of the 1967-1968 schedule, Mountain View adopted the following:

"Application of the Salary Schedule

"1. The salary adjustment for classroom teachers shall not exceed $700. in the 1967-68 school year except those with 30 years of service. The balance of the adjustment shall be made in the 1968-69 school year.

"2. Teachers with 30 years of service shall receive one increment of $300. in addition to the increase in salary for the school year 1967-68. In the following year a second increment of $300. will be granted for said employees with 30 years or more of service. For those teachers who have 15 years or more of service, but less than 30, one increment shall extend the maximum salary by $300."

It is the validity of the above language, and especially of the purported $700 increment limitation, that presents to this court one of the major issues of this case, and one which is a novel question of law in this Commonwealth.

### ISSUES PRESENTED

I. Applicability of the defenses of laches and the statute of limitations.

II. The application of the $900 increment minimum of Act 405 to the 1965-1966 school year.

III. The determination of the correct steps upon which various plaintiffs should have been placed by Mountain View.

IV. The validity of the $700 increment maximum adopted by Mountain View for the 1967-1968 school year.

## DISCUSSION OF LAW

I. Initially this court must determine the merits of the defenses raised in Mountain View's new matter, namely laches and the statute of limitations. Plaintiffs are correct in asserting first that laches is uniquely an equitable defense and is not available in assumpsit actions: Transbel Investment Co. v. Scott, 344 Pa. 544, 26 A. 2d 205 (1942).

Second, the earliest claims asserted by any of the plaintiffs are for the school year 1965-1966, and in light of the various papers filed in this case only the claim in count 17 still stands for that year (see below at II). The contract in question, signed on July 26, 1965, by its own terms continues "in force year after year" but otherwise does not specify the dates contemplated. However, it does incorporate by reference the provisions of the Public School Code of December 27, 1951, P.L. 1776, 24 P.S. §§10-1066, et seq., and the amendments thereto, in which it is defined that the term "school year" in districts of the third class (such as Mountain View) means the period from July 1 of one calendar year through June 30 of the next calendar year: Act of July 31, 1963, P.L. 389, sec. 1, 24 P.S. §1-102(4). Thus the contract in question renewed automatically as of July 1, 1966. If it can be said that the contract for 1965-1966 expired at all, it did so only after June 30, 1966.

There have come to the attention of this court no cases dealing specifically with the applicability of statutes of limitations to actions on teachers' employment contracts. It is a general principle of

law, however, that a cause of action on a contract for payment of services arises only when the services are completed: Thorpe v. Schoenbrun, 202 Pa. Superior Ct. 375, 195 A. 2d 870 (1963). It is also the law that the six-year statute of limitations begins to run only when the cause of action on a contract arises: Thorpe v. Schoenbrun, supra; Rankin v. Woodworth, 3 P. & W. 48 (1831).

In the case at bar, the cause of action on the 1965-1966 employment contract arose only after June 30, 1966, and the praecipe for writ of summons was filed on June 26, 1972. Therefore, even if the six-year statute of limitations applies to actions on employment contracts of this nature which renew automatically each year, the cause of action asserted in count 17 of this case is not barred. It is unnecessary for this court to decide the effect of the automatic renewal clause or of the fact that the contracts in this case appear to be sealed instruments and thus might be unaffected by any statute of limitations. See Lundvall v. Camp Hill School District, 58 D. & C. 2d 643, 22 Cumb. 142 (1972).

II. It appears from the parties' respective positions on facts that, with the exception of plaintiff Woelkers in count 17, all plaintiffs either were paid at least the State-mandated minimum salary at the correct step or received a $900 increase for the school year 1965-1966. Section 2(f) of Act 405 provided:

"Where the difference between the salary earned by a professional or temporary professional employe for the school year 1964-1965 and the salary to which such employe is entitled in accordance with the foregoing provisions of this section exceeds nine hundred dollars ($900), such employe shall be paid for the school year 1965-1966 an

amount at least nine hundred dollars ($900) in excess of the salary paid in the previous year, and such employe shall receive for the school year 1966-1967 and thereafter, not less than the full minimum salary provided under the foregoing provisions of this section."

With the exception of Woelkers, Mountain View complied with Act 405 in 1965-1966 by paying plaintiffs either the mandated minimum or at a level $900 above the salary of 1964-1965. Its noncompliance in Woelkers' case was due to a miscalculation of the step which Woelkers had attained (see below at III).

III. The calculation of the "steps" attained by teachers for purposes of their mandated salary schedules is a matter of law determined by Act 405 and Act 96 and by recent court decisions interpreting those statutes.

Prior to Act 405, which took effect as of the 1965-1966 school year, the General Assembly mandated a minimum annual salary for teachers, a minimum annual service increment, a minimum number of annual service increments, and a maximum annual salary. The intent of the legislature in promulgating Act 405 and Act 96 which superseded it was to establish a uniform statewide system whereby length of service would be recognized and rewarded in dollars and whereby the high quality of more recent employes, as originally bargained for with more than minimum salaries, would continue to be recognized in terms of dollars. Both purposes are accomplished by setting up a series of steps which represents a progression of increments to a maximum, and each of which represents one year of service. The schedule of steps is not really very different from the old minimum salaries and in-

crements, but as interpreted by decisional law it does have the advantage for the teacher of making permanent the benefit of his bargain as originally struck with his employer school district.

The leading case, and the only appellate authority interpreting Act 405 and Act 96, is Baldacchino v. Central Cambria School District, 29 Cambria 1, affirmed per curiam, 218 Pa. Superior Ct. 752, 273. A. 2d 549, allocatur denied March 29, 1971. Baldacchino established a definition of the legislative phrase, "step . . . attained by agreement" from Act 405, by comparing it to the "point in the schedule to be agreed upon" by teachers and employer school districts at the time they execute employment contracts, which phrase has been part of the Public School Code since 1949: Act of March 10, 1949, P.L. 30, art. XI, sec. 1149, 24 P.S. §11-1149. Baldacchino held that ". . . the words 'point' and 'step' must be synonymous, or the wording of Act 405 makes no sense."

Expressed as simply as possible, Baldacchino says that the "point" or "step" in the schedule at which a teacher enters at the time of his initial employment is determined by the amount by which the initial, agreed annual salary exceeds the then mandated minimum annual salary. In the case of a teacher hired before the effective date of Act 405, that amount, divided by the then applicable minimum annual increment, yields the number of constructive years of service for which the teacher is given credit at the time of his initial contract. Subsequently, of course, the teacher is advanced up the schedule one step per year according to years of actual service. See also Welsh v. The Wilkes-Barre Board of Education, 46 D. & C. 2d 61, 58 Luz. 127 (1968). For a teacher hired after Act 405

took effect, the calculation is even simpler; one must look no further than the tabular salary schedule to determine at which step the initial salary level places a teacher. Then each year of service places the teacher one step higher in the schedule. The same reasoning and the same methods of calculation obtain under Act 96, despite changes in the wording of the statute.

In the case at bar only seven of the 22 plaintiffs are affected adversely in terms of dollars by Mountain View's miscalculation of the steps on which they should be placed on the salary schedules. We shall proceed to review each of these seven individually, as examples of the rule of law established by Baldacchino.

Plaintiff in count 7, John McLaughlin, signed a contract with Mountain View on May 6, 1963, to commence teaching in the 1963-1964 school year. The contract, a copy of which was attached to defendant's answer to interrogatories, recited a basic salary of $4900, plus $400 for coaching. The mandated minimum annual salary in effect at that date of the contract was $3600 and the minimum annual increment $200: Act of June 1, 1956, P.L. 1955, 1948, sec. 3, 24 P.S. §11-1142(2). Plaintiff contends that his agreement with Mountain View entitled him to constructive credit for six and one-half years of teaching, or, expressed in terms of Act 405, to be placed on step 7.5 for the school year 1963-1964. Mountain View contends that McLaughlin should be placed at a point or on a step according to the mandated salary schedule in effect in September 1963, when he commenced his teaching duties at Mountain View. The Act of August 1, 1963, P.L. 466, sec. 1, 24 P.S. §11-1142, increased the mandated minimum annual salary to $4200

and the minimum annual increment to $300. If it applied to McLaughlin, his correct step for 1963-1964 for purposes of Act 405 would have been 3⅓. However, the Baldacchino court held specifically that in such a case the controlling law is the act in effect at the date of the execution of the employment contract. Because the effective date of the Act of 1963 was August 1, 1963, the Act of 1956 must be used in determining the correct step. See also Deeter et al. v. Berlin Brothersvalley School District, No. 1093 C.D. 1969 (Somerset County 1971); and Rishkofski et al. v. Central Columbia Area School District, No. 280 October Term 1972 (Columbia County 1973). Hence, plaintiff's contention is correct, and this court holds that for the 1966-1967 school year he should have been placed on step 10.5, entitling him to the then maximum annual salary of $6900.

In count 12, plaintiff Joseph Leonardo was hired for the 1960-1961 school year at an annual salary of $4000, when the minimum annual salary was $3600 and the minimum annual increment was $200. He was thus given credit for two years of constructive service or placed at point (or step) three. Consequently, for the 1966-1967 school year he should have been placed at step 9 by Mountain View, entitling him to the maximum of $6900.

In count 13, plaintiff Ralph E. Kehrli was hired for the 1959-1960 school year at a salary of $4200. Since he had a master's degree at that time, the applicable minimum annual salary was $3800, being the $3600 provided by the Act of June 1, 1956, P.L. 1955, 1948, sec. 3, 24 P.S. §11-1142(3), plus the additional $200 provided by the Act of March 10, 1949, P.L. 30, art. XI, sec. 1144, 24 P.S. §11-1144. Thus, for 1959-1960, he was placed at point

or step 3, and for the 1966-1967 school year he should have been placed at step 10, entitling him to the $6900 maximum salary plus, of course, the $300 increment for master's degree provided by the Act of August 1, 1963, P.L. 466, sec. 2, 24 P.S. §11-1142.

In count 14, plaintiff Elizabeth Seibert was hired for the 1962-1963 school year at a salary of $4500, when the mandated minimum still was $3600 and the minimum increment $200. This was the equivalent of crediting her with four and one half years of constructive service and placing her at step 5.5. Therefore, in 1966-1967, she should have been placed at step 9.5 and given the maximum salary of $6900.

In count 16, plaintiff Katherine S. Hopkins was hired for the 1966-1967 school year at an annual salary level of $4650, or at step 1.5 on the schedule set forth in Act 405. The school district admits that it owes her $300 for each year after 1967-1968, and her claim for that year will be considered with all others for that year under subheading (IV) below.

In count 17, plaintiff William C. Woelkers was hired on June 24, 1963, for the school year 1963-1964. His salary was set at $5000 and, by the authority of the Baldacchino case as set forth above with respect to plaintiff McLaughlin, that placed him at the equivalent of step 8. Two years later, in 1965-1966, he was at step 10 in the schedule under Act 405, but as a result of the $900 increment minimum he was entitled by law to no more than $6200, that being $900 more than his 1964-1965 salary of $5300. In June 1966, Woelkers received his master's degree, which entitled him, at step 11, to the maximum mandated salary of $6900 plus a $300 increment, or $7200 for the school year 1966-

1967. In following years he was entitled to be placed at the maximum levels under the applicable local schedules.

The contention of Mountain View that it owes Woelkers less money for the 1969-1970 school year is without merit. Woelkers may have worked only 75½ days during that year because of an illness, but, according to the papers filed in this case, he was paid his full contracted salary of $9150. The issue before this court is what the correct contracted salary should have been and Mountain View will not be heard now to say it did not have to pay him his full salary.

In count 22, plaintiff Richard Wagner was hired for the 1958-1959 school year at a salary of $3600, one $200 increment above the then minimum of $3400. For purposes of Act 405, that was the equivalent of step 2, and his correct level for the 1967-1968 school year was step 11. Thus, Mountain View owes him $300 for both years 1969-1970 and 1970-1971. His claim for 1967-1968 will also be dealt with in (IV) below.

IV. The novel question of law presented squarely by the facts of this case is the validity of Mountain View's limitation of $700 on individual salary increases for the school year 1967-1968. That limitation was adopted at the same time as the local salary schedule for that year, which fixed salary levels $800 above the State-mandated minimum levels for the respective steps.

While it may seem that Mountain View was giving with one hand and taking away with the other, this court is not willing to find as a matter of law that the limitation was illegal. Perhaps it was prompted by a certain lack of familiarity with the concept of salary schedules under Act 405; cer-

tainly it has created a great deal of confusion. Yet it was not an attempt by defendant school board to evade the mandates of Act 405, for no individual salary remained below those mandated levels, at least in those cases where the steps attained were calculated correctly. Given the full compliance of Mountain View with Act 405 in 1965-1966 and 1966-1967, it would be mathematically impossible for a salary fixed by the 1967-1968 local schedule, even with the limitation, to be less than the State-mandated minimum.

Lest there remain any confusion, this court holds specifically that where, as here, a local school district promulgates a local schedule of salaries which complies with the State-mandated schedule in all respects, that local schedule will apply to local salaries to the exclusion of the State salary schedule. Naturally the test of such compliance is whether the local salary for each step is at or above the State-mandated minimum salary for that step. What Mountain View did in limiting individual increases for 1967-1968 is essentially the same as the provision of Act 405 allowing local school districts to limit their individual increases to $900 for 1965-1966. Both are based on the avoidance of financial hardship on the local school district.

The reasoning behind the rule of law which we make today is not without support in the precedents of decisional law in this Commonwealth. In 1939, our Supreme Court held that even a reduction in an individual salary, as part of a general reduction of salaries to the minimum mandated levels, was perfectly valid and not a "demotion" violative of the tenure act.

"The legislature did not intend to thus restrict the power of the School District to make a general ad-

justment of all salaries to the statutory minimum where the financial condition of the district required that such action be taken. In the instant case, there was no discrimination and the reduction was not made for the purpose of evading the provisions giving the teachers permanent tenure of office.": Smith v. Philadelphia School District, 334 Pa. 197, 206, 5 A. 2d 535, 539 (1939). A similar case allowing reduction of teachers' salaries to State-mandated minimum levels is Beatty v. Olyphant Borough School District, 42 D. & C. 195 (Lackawanna County 1941). Consider also the following language of Judge Rogers of our Commonwealth Court in a case decided earlier this year:

". . . If it is the plaintiff's contention that the action of the Scott Township School District in fixing her salary at $300 above the state mandated salary imposed a continuing obligation on its successors to pay her each year an amount equal to $300 more than the state mandated minimum, even if the amount actually paid is not less than Scott agreed to pay and complies with the statutory minimum, such contention is without merit.": Sweeney v. Lakeland School District, 13 Pa. Commonwealth Ct. 485, 491, 319 A. 2d 207, 210 (1974).

If the general reduction of a local salary schedule to State-mandated minimum levels is a legal exercise of the power of a local school board, how much less offensive is a mere ceiling on individual increases which still leaves all individuals above minimum salary levels! While Mountain View might have found a more direct way to achieve the same effect, its $700 limitation was entirely legal.

The effect of this holding is to deny the relief prayed for in plaintiffs' complaint, except for those

seven plaintiffs named under (III) above. The other 15 plaintiffs have suffered no miscalculation of steps attained by agreement under Act 405 and have received all the salary to which they were entitled for the time periods alleged in their complaint. It should be noted in passing that there may be some question of misapplication by Mountain View of its own local schedule for 1971-1972, and the court expects that the parties can resolve any such question amicably. However, this court cannot render judgment for damages not prayed for, and only the seven plaintiffs named above prayed for relief for 1971-1972. They are being given exactly what they asked for that year.

## CONCLUSIONS

I. Neither the doctrine of laches nor any statute of limitations bars any claim in this lawsuit.

II. The $900 increment minimum established by Act 405 bars all claims for 1965-1966, except that of plaintiff in count 17.

III. Mountain View miscalculated the correct steps under Act 405 and Act 96 for the seven named plaintiffs.

IV. The $700 increment limitation imposed by Mountain View in 1966-1967 is a valid exercise of the power of the local school board.

Accordingly we make the following

## ORDER

And now, December 14, 1974, plaintiffs' motion for summary judgment is hereby granted, and judgment is entered against defendant, Mountain View School District, in favor of the individual plaintiffs in the following amounts, together with

six percent interest per annum as provided by the Act of June 30, 1959, P.L. 493, sec. 1, 24 P.S. §11-1155:

For John McLaughlin:

$300 with interest thereon from 30 June 1967
$300 with interest thereon from 30 June 1968
$600 with interest thereon from 30 June 1970
$600 with interest thereon from 30 June 1971
$300 with interest thereon from 30 June 1972

For Joseph Leonardo:

$600 with interest thereon from 30 June 1967
$600 with interest thereon from 30 June 1968
$300 with interest thereon from 30 June 1969
$600 with interest thereon from 30 June 1970
$600 with interest thereon from 30 June 1971
$600 with interest thereon from 30 June 1972

For Ralph E. Kehrli:

$600 with interest thereon from 30 June 1967
$600 with interest thereon from 30 June 1968
$300 with interest thereon from 30 June 1969
$600 with interest thereon from 30 June 1970
$600 with interest thereon from 30 June 1971
$600 with interest thereon from 30 June 1972

For Elizabeth Seibert:

$300 with interest thereon from 30 June 1967
$300 with interest thereon from 30 June 1968
$450 with interest thereon from 30 June 1970
$450 with interest thereon from 30 June 1971
$300 with interest thereon from 30 June 1972

For Katherine S. Hopkins:

$300 with interest thereon from 30 June 1969
$300 with interest thereon from 30 June 1970
$300 with interest thereon from 30 June 1971
$300 with interest thereon from 30 June 1972

For William C. Woelkers:

$400 with interest thereon from 30 June 1966
$800 with interest thereon from 30 June 1967
$1100 with interest thereon from 30 June 1968
$750 with interest thereon from 30 June 1969
$1350 with interest thereon from 30 June 1970
$1350 with interest thereon from 30 June 1971
$1050 with interest thereon from 30 June 1972

For Richard Wagner:

$300 with interest thereon from 30 June 1970
$300 with interest thereon from 30 June 1971