# CHARLESTON.

McCONNELL & DRUMMOND v. HEWES *et al.*

| 50 | 33 |
| 64 | 160 |
| 64 | 468 |

Submitted June 10, 1901.   Decided November 9, 1901.

1. BUILDING CONTRACT—*Estimates Construed.*

By written contract it is provided that certain contractors will erect a building on a certain lot for the owner thereof for a fixed sum payable in instalments on estimates and certificates of the architects as the work progresses; estimates must be on the labor and material actually used in the building and can not be extended to include material not so used although in course of preparation for such use. The architects can only be required to make estimates and the owner to make payments on the building as it is constructed. (pp. 34, 35).

2. CONTRACTOR—*Material Furnished—Risk.*

The material furnished by the contractor although the owner of the building may have a conditional interest therein remains the property and at the risk of the contractor until it has been incorporated into the building and has been approved by the architects. (p. 35).

3. MATERIAL MAN—*No Mechanics Lien.*

A material-man who furnishes material to the contractors can have no lien on such building if such material is not incorporated therein by reason of the default of the contractors. (p. 37).

4. CONTRACTOR'S INSOLVENCY—*Good Faith.*

If such contractors are compelled by reason of their own insolvency to abandon their contract they cannot sue for the work and labor performed unless they allege and prove that either the owner as a dependent condition to the continuance of the work, failed to pay the estimates of the architects when properly made or collusively induced such architects in bad faith not to make such estimates for the purpose of evading the payment thereof and defeating such precedent condition. (p. 40).

5. CONTRACTOR'S INSOLVENCY—*His Liability.*

Personal insolvency on the part of the contractors does not relieve them from the obligations of their contract nor legally justify their abandonment thereof. (p. 40).

6. EQUITY—*Receiver—Contractor's Loss.*

If such contractors have a court of equity, through a receiver appointed for the purpose, take charge and make sale of their property they must suffer the loss alone, and a person not interested has no right to complain of the sacrifice of the property thus occasioned. (p. 40).

7. Material Men—*Notice to Owner.*
  Material-men who furnish material to such contractors do so at their own risk unless such material is incorporated in the building for which it is furnished or they notify the owner of such building in advance that they will look to her for payment therefor and she acquiesces therein and receives the material with such condition attached. In the latter case she, and not the contractors, becomes the purchaser of the material. (p. 41).

8. Building Contract—*Fixed Price.*
  A contract to erect a building at a fixed price is an entire contract and must be performed in accordance with its expressed terms as contained in the writing creating it, unless properly modified in a legal manner. (p. 140).

Appeal from Circuit Court, Harrison County.

Action by McConnell & Drummond against Rossie E. Hewes and others. Judgment for plaintiffs, and defendant Hewes appeals.

*Reversed.*

John Bassel and Millard F. Snider, for appellant.

Lewis C. Lawson, for appellees.

Dent, Judge:

Rossie E. Hewes appeals from certain decrees of the circuit court of Harrison County in a chancery suit therein pending wherein she and others are defendants and J. A. McConnell and B. L. Drummond are plaintiffs. The case as presented by the record is as follows, to-wit: The plaintiffs with the appellant on the 31st day of May, 1898, entered into a written contract to build her a brick residence on her lot in the town of Clarksburg.

The three articles of the contract involved in this controversy are in these words.

"Article I. The contractor under the direction and to the satisfaction of Franzheim, Giesey & Faris, architects, acting for the purpose of this contract as agents of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the said architects for the erection complete of a brick residence in accordance with plans and specifications.

"Art. IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be seven thousand nine hundred

dollars, subject to additions and deductions, as hereinbefore provided, and that such sum shall be paid in current funds by the owner to the contractor in installments, as follows: On estimates made by architects reserving twenty per cent. of each payment until the work is completed.

The final payment shall be made within ten days after this contract is fulfilled.

All payments shall be made upon written certificates of the architects to the effect that such payments have become due.

If at any time there shall be evidence of any lien or claim for which, if established, the owner or the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default.

"Art. X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

Plaintiffs allege in their bill that in accordance with their contract they immediately began the construction of the house for the defendant and continued to furnish material therefor and work thereon until the 26th day of July, 1898, at which time they had done labor and furnished material to the amount of three thousand dollars, that they had a verbal agreement with the appellant that estimates should be made on the work and material every thirty days and payments were to be made therefor accordingly, that two estimates had been made, one of the 1st day of July and the other of the 1st day of August, neither of which the appellant paid and plaintiffs not being financially able to proceed with the work on account of the failure of the appellant to meet the payments, abandoned the same, filed a mechanic's lien and instituted this suit to enforce the same. They further allege that the following persons who furnished material and performed labor in the construction of such house held

claims thereon: G. F. Stockert ninety-four dollars and seven cents.; The Bedford Indiana Co., one hundred and thirty-one dollars; Keystone Plaster Co., four hundred and forty dollars and eighty-five cents; Ruhl, Koblegard & Co., fifty four dollars and sixty-five cents, and Daniel Limer, three hundred and fifty-seven dollars and twenty cents, and that they, together with the plaintiffs, have liens on the house, lot, and material and pray that such liens may be ascertained and enforced by sale of such property.

The appellant in her answer admits the contract, the labor performed, and the material furnished in part but denies that any estimates had been made or that there was any agreement that they should be made every thirty days or that she was under obligation to pay plaintiffs anything at the time they ceased working on the building although she had paid them at that date the sum of one thousand two hundred and sixty-two dollars and fifty-eight cents. She also denied the right of the court to appoint a receiver and sell the loose material as her property and especially that portion thereof not on her lot.

The demurrer to the bill was overruled and the cause was referred to a commissioner and on his report being excepted to, was recommitted to him. The cause was finally heard on the commissioner's second report and exceptions thereto and a decree was entered subjecting the appellant's real estate to sale, after application of the net proceeds in the receiver's hands of the sale of the material, to satisfy the following liens: Daniel Limer three hundred and thirty-nine dollars and fifty-nine cents; G. F. Stockert ninety-eight dollars and twenty-nine cents; Keystone Plaster Co., four hundred and sixty dollars and thirty-eight cents, and plaintiffs two thousand and ten dollars and fourteen cents.

The facts appear to be as follows: The plaintiffs during the months of June and July actually constructed the basement of the house, furnishing labor and material therefor to the amount of about one thousand dollars. They also bargained for and had on the ground partly prepared and on the cars other material of the value of about two thousand dollars. None of which ever entered into or became a part of the building but all of which was disposed of at the instance of the plaintiffs by a receiver appointed for the purpose.

No estimates were made by the architects but according to

their admission and the proofs the appellant had paid about eight hundred dollars, being eighty per cent. of all the labor and material that had actually gone into the house.

By the written contract she was not obligated to advance money to pay for material as furnished but was only to pay on estimates of the building as completed, that is eighty per cent. thereof with the privilege of withholding therefrom sufficient to meet any threatened lien against the same. The plaintiffs' own statement as contained in the bill and exhibits shows the cost of the basement completed to have been one thousand and fifty dollars, on which they had received from appellant seven hundred and twenty-one dollars and thirty-one cents and they still owed Daniel Limer for labor performed in constructing the same three hundred and fifty-seven dollars and twenty cents which amount in addition to the twenty per cent. she was entitled to withhold from them. Thus according to their own showing there was nothing due them by their written contract at the time they ceased to work.

In the material not used in the building, she had a mere contingent right of property which the contractors in whom was the absolute right of property could defeat at any time by refusing to put it in the building and this they did in having it sold by a receiver appointed at their instance. To this she has no right to object for it was not her property. It was their property and they had the right to dispose of it as they should see fit until it actually became a part of the real estate by being permanently attached thereto. They obligated themselves to furnish the material and build her a brick house for which she agreed to pay them a stipulated sum. She did not agree to buy any material of them nor to furnish them the funds to buy the material for her. In material purchased by them for such house she might and did have a prospective or contingent right of property which they as the absolute owners thereof had the right to defeat. They could not compel her to take the loose material and pay for it nor could they sell it as her material for she had made no bargain for material. If she prevented its use in the house without just cause their remedy would be on her contract. Their claim against her would be for damages and not for the cost of the material. They would have the right to sell the material either by themselves or through a receiver as their agent and of this she could not complain for they could only recover from her the

loss occasioned by her breach of her contract. In estimating such damages the costs and expenses of the receiver could not be included unless the receiver obtained a price for the material in excess of what the plaintiffs could have sold it for to the extent of such costs and expenses for they being the absolute owners thereof had the right to dispose of the material without the intervention of a receiver. On the other hand if the receiver sold the material for less than they could have sold it for they and not she must lose the difference as they are responsible for the appointment of the receiver who was nothing more than their agent. If it was to be treated as her property it should have been sold as a part of and along with her lot. It is claimed that the material was perishable. The evidence does not sustain this allegation for with a little care it could have been preserved.

As therefore shown it was not her property and the plaintiffs had the right to dispose of it as they pleased; the real question being as to whether they have any right to damages against her for loss on the material and this depends entirely on the fact as to whether she prevented them from using this material in the construction of the house.

They placed her liability on the fact that she failed to pay the estimates when made.

On this question the allegations of the bill are without evidence to sustain them as no estimates were ever made in accordance with the contract. In his proof the plaintiffs, to supply this deficiency, undertakes to show that estimates should have been made and that it is the fault of the respondent that they were not so made and is no excuse for not making her stipulated payments. Herein they failed again for the contract shows that she was only to pay on estimates of the building as completed and not on the material as furnished with the right of certain reservations and as heretofore shown, she has more than done so.

To avoid this provision of the contract plaintiffs claim that they had an after verbal agreement with the appellant to the effect that she was to have estimates made every thirty days on both building and material and make her payments accordingly. She denies this emphatically and says that her understanding was that she was not to be compelled to pay until the house was completed but that she agreed to pay as she could for their and her own convenience.

The only evidence other than the evidence of plaintiff, McCon-

nell, is the testimony of Daniel Limer, who testifies that "She (appellant) told me and McConnell that she was going to pay eighty per cent. on the dollar every thirty days for the labor performed and material furnished. She said that was the contract. When my work was done it was to be measured up and paid off in full. Every thirty days I was to get eighty per cent. of my work."

This evidence is wholly insufficient to avoid the express provision of the written contract even though the denial of the appellant was absent.

By the contract the estimates were to be made on the building as completed, including the labor and material used therein and not on the material as purchased. And now by such loose conversation the attempt is made to show that she agreed to depart from the written contract and allow estimates to be made on the material purchased before even the same was paid for and thus pay eighty per cent. of the price of the material in advance to the contractors without regard to whether the same was ever used in the building or the material man paid therefor. To thus change a sealed obligation is asking too much of a court of equity.

If she did not deny it, such an agreement is wholly without consideration, inequitable, and void. The only consideration presented is the insolvency of the plaintiffs and their inability to pay even the freight on the material purchased by them. This might be a good consideration to arouse the tender sympathies of a woman's heart but is not a sufficient legal consideration to induce a court of equity to relieve the plaintiffs from a written obligation about which there is no dispute.

This furnishes the key to this litigation, the plaintiffs finding themselves unable by reason of their insolvency to purchase the material necessary to the performance of their contract attempt to shift their liability on to the appellant and make her pay where they should pay and assume the whole risk of compliance with their obligations to her. If she had yielded to their demands she would have been entirely at their mercy and subject to their insolvency. They are attempting now to make her responsible for losses occasioned by their insolvency alone. This they virtually allege in the bill and prove in their evidence for they acknowledge in both that they were financially unable to provide the material and labor to construct her building unless

she provided eighty per cent. of the price thereof before it was actually used in such building. There is no pretense that the appellant was insolvent or that her lot and the building to be constructed thereon would not have been ample security for all the labor and material to be used in construction but the only sufficient reason given for a cessation of their labors and the breach of their contract is that they themselves are insolvent. If they had been solvent and had proceeded with their contract and she had failed to meet the estimates when properly made the only damages the law would allow them would be interest on the estimates withheld. Their insolvency could not increase these damages unless it was so specified in the written contract and it was made obligatory on her to furnish the money by reason of their insolvency as a condition precedent and on her failure to do so to pay all damages occasioned thereby. They did not make it known to her in advance that she was dealing with insolvents or she would probably have refused to contract with them because thereof. They therefore must shoulder the consequences of their own insolvency.

According to the contract, the necessary provisions of which are before quoted, she was in no default when they refused to comply with the same and their mechanic's lien and suit for the enforcement thereof are wholly without justification and should not have been entertained by the circuit court.

It is a hard bed on which to lie but they made it unjustly for another and that they are compelled to occupy it is due to their own hasty and ill advised conduct. The evidence of the architects on whose certificates alone the installments were to be paid is not even taken to show the extent of the compliance of the plaintiffs with the contract. This raises a presumption, if necessary, against them for they agreed to do the work under the superintendance of the architects who were to determine as to the progress and the efficiency of the work. An attempt is made to show that the appellant admitted ownership of the material from her refusal to sell the same. This she had no right to do but she did have a contingent right therein and stated she wanted the material used in her house for which it was purchased. The plaintiffs could have sold it had they wished to do so, as it belonged to them, was purchased by them, shipped to them, and was in their possession except in so far as it was held for freight bill. Her contract with them was an entirety

and this was to furnish the material and to build her a brick dwelling house on her lot at the price of seven thousand nine hundred dollars.

For non-compliance with this contract they have furnished no reasonable excuse. Insolvency on their part is insufficient.

To recover under section 6, chapter 75, Code, the plaintiffs must allege and prove either that the architects made proper estimates and gave proper certificates or that they in bad faith collusively refused to make such estimates and give such certificates, also that the appellant refused to pay such proper estimates whether properly made or not and that such payment was a precedent condition to further fulfillment of the contract incapable of satisfaction in damages. A. & E. En. L. (2 Ed.), 153. 4th En. P. P. 643, 644.

Plaintiffs failed to make out their case and their bill should have been dismissed in so far as their claim was concerned. This conclusion raises the question as to whether any of the defendants have the right to maintain this suit under section 10, chapter 75, Code. This question has not yet been presented to the circuit court. The defendants who can show themselves entitled to a lien independent of the contractors' rights can maintain this suit. But a lien does not attach to the property for material furnished the contractor and not used in the building by reason of their default. If the material is used in the building and the owner gets the benefit thereof the lien attaches without regard to the contract unless it has been recorded under section 5, chapter 75, Code. The appellant can not be held liable under her contract for material furnished by the contractor except on the certificate of the architects, showing the material as actually used in the building. Unless furnished on her credit with her knowledge and assent the material does not become her property absolutely until approved by the architects. Nor can the contractors be held to be her agents under section 5, if the material is by their fault not used in the building. The object of this provision is to secure materialmen when the material furnished by them has become a part of the building beyond reclaimer and is to prevent collusion between the contractor and the owner to defraud the materialmen, and not to destroy the owner's security under her contract.

In so far as the decree disposes of the fund arising from the

sale of the plaintiffs' property at their instance, because of their insolvency, it is affirmed, as the appellant is not interested therein, but in all other respects it is reversed at the cost of the plaintiffs, and the case is remanded for further proceedings.

*Reversed.*