### BANK OF FOLLANSBEE v. FOLLANSBEE LUMBER CO.

#### In re THOMAS & LOTT.

(Circuit Court of Appeals, Fourth Circuit. January 3, 1918.)

#### No. 1555.

1. MORTGAGES ☞178—PRIORITY—MECHANICS' LIENS.

    Where a West Virginia materialman failed to file a lien within the period prescribed by the state law, the lien was lost, and could not, as against a mortgagee whose mortgage was subsequent to the lien, be revived by delivery of a trifling amount of material after expiration of the period, particularly where that was a mere subterfuge to revive the lien, and the contractors had become notoriously insolvent.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. COURTS ⊚═366(1)—FEDERAL COURTS—STATUTES—CONSTRUCTION.
  Federal courts are bound by a decision of the highest state court construing a state statute.

3. MECHANICS' LIENS ⊚═48—PERFECTION—USE OF MATERIALS.
  The West Virginia statute (Code 1913, c. 75 [secs. 3842–3857]) by plain implication, if not by direct statement, requires a lien claimant to show that materials furnished by him have actually been used in the building on which the lien is claimed.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling, in Bankruptcy; Alston G. Dayton, Judge.

In the matter of the bankruptcy of Thomas & Lott. Petition by the Follansbee Lumber Company, a corporation, opposed by the Bank of Follansbee. From a decree for petitioner, the bank appeals. Reversed and remanded.

R. L. Ramsay, of Wellsburg, W. Va., for appellant.

F. R. Anderson, of Wellsburg, W. Va. (J. F. Cree, of Wellsburg, W. Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. In September, 1915, the appellant, Bank of Follansbee, made a loan of $1,500 to the firm of Thomas & Lott, building contractors, payment of which was secured by a deed of trust on a city lot in Follansbee belonging to M. K. Lott, one of the partners. Thomas & Lott were then engaged in building a house on this lot under contract with the owner, and were getting the materials therefor from the appellee, Follansbee Lumber Company, in pursuance of a verbal agreement previously made. On March 28, 1916, the lumber company served on Lott a notice of mechanic's lien for the amount claimed to be due for materials furnished prior to that date. This notice was recorded in the proper clerk's office on April 10th, and a foreclosure suit brought in September following, subject to the jurisdiction of the bankruptcy court, to enforce the alleged lien. The validity of this lien is the question to be determined, and the facts for consideration appear to be these:

In the notice served on Lott is a statement of account which begins with the heading, "Materials Furnished as per Estimate," and the figures "1915–1916." Under this is a list of some 77 items, without dates or prices, and the notation at the end, "Amount estimate $827.-00." Then follows an itemized list of "Extras," with dates and prices, amounting to $196.84, making a total of $1,023.84. Credit is given for $363.29, for "materials not furnished or returned," leaving a balance of $660.55, for which the lien is claimed. All these materials except two insignificant items, were furnished on or before December 3, 1915, and about this time, apparently, the insolvency of Thomas & Lott became generally known. Their contract to build the house in question had been abandoned without completion, and Thomas had left the county. Meetings of creditors were

held, which the president of the lumber company attended, and at which it was shown that the firm was hopelessly involved; but no plan of settlement was agreed upon, and bankruptcy presently followed. Whilst affairs were in this situation, the lumber company, at the alleged request of Lott, on February 1, 1916, delivered on the premises a few joints of sewer pipe, for which $1.38 was charged, and on March 2, 1916, a couple of cellar sash, for which $1.70 was charged. This was done, as the testimony indicates, not with any view of carrying out its agreement to supply the contractors with materials for the house, but for the sole purpose of extending the time for filing a lien. Neither of these items was embraced in the original estimate, and it is not proved that either of them was ever put into the building. In the bankruptcy proceedings the house and lot were sold free from incumbrance and the proceeds brought into court. Thereupon the lumber company filed a petition for the payment of its claim out of the fund, and this the bank resisted on the ground that the asserted lien was invalid.

[1] Under the West Virginia statute (Code 1913, c. 75 [secs. 3842–3857]), as we understand it, a lien claimant for materials is required (1) to file with the owner of the property an itemized account within 35 days after he shall have ceased to furnish materials; (2) to file with the clerk of the county for record a just and true account of the amount due and owing, after allowing all credits, with a description of the property, within 60 days after ceasing to furnish materials; and (3) to begin suit to enforce the lien within 6 months thereafter. If, therefore, March 2, 1916, the date when the item of cellar sash was delivered, be taken as the date when the lumber company "ceased" to furnish materials, it follows that the lien was filed in time; otherwise, it was obviously filed too late. As to this item, as well as the sewer pipe delivered February 1st, the learned District Judge in his opinion says:

"I think there can be no reasonable doubt that, at the time these two items were 'furnished,' the lumber company had ceased, for more than the statutory period of 60 days, to furnish material; that the furnishing of them was nothing more nor less than a subterfuge to save it from the legal consequence of its negligence in failing to file its lien in time; and that these two items of material were not only not used in the building, but that the lumber company did not expect them to be so used. This for the reason that, at the time they were furnished, the bankrupt contractors had ceased work on the building, were absolutely insolvent, and this lumber company and other creditors were consulting as to the best methods for closing them out and realizing from their assets payment of their debts."

As above stated, the testimony supports the findings contained in the paragraph quoted, and we are of opinion that these facts should be held to invalidate the lumber company's lien. The question here is not between materialman and owner, or between materialman and contractor, but between materialman and the bank, which loaned its money, while the house was in process of erection, on the security of the property. That security was subject to whatever right the lumber company then had to a mechanic's lien for the supplies it had furnished. But, as the lumber company failed to assert its right by filing

a lien within the prescribed period, its right was lost by the delay, and could not be revived by delivering for that purpose a trifling amount of material at a time when otherwise it would be barred. 27 Cyc. 147. If the lumber company had proceeded within the required time, even reckoned from the 3d of December, its lien would have had priority over the deed of trust. The bank was presumed to know that its security was subordinate, so long as the lumber company had the right to file a lien, and was bound to take such measures as it could to protect itself while that situation continued. But, when the statutory period was allowed to pass without action, the bank was justified in assuming that the deed of trust had become the first claim on the property. As was said in Inman v. Henderson, 29 Or. 116, 45 Pac. 300:

"One who takes a mortgage on land after the construction of a building thereon has been commenced holds it subject to any valid mechanic's lien the claim of which may be filed within the time required by statute; * * * but the interests of the mortgagee cannot be affected by any agreement between the owner and the lien claimant extending the time in which to file such claim, even if such agreement is valid as between them."

Moreover, in this case, the insolvency of Thomas & Lott and their abandonment of the contract to build the house were known to the lumber company as early as December. They were absolved thereby from any obligation to complete the supply of materials called for by their verbal agreement, whatever its terms, and had then the undoubted right to file a lien for the materials theretofore furnished But for some reason they refrained from taking any steps to assert their lien until it was discovered that the time for doing so had elapsed. Under these circumstances, it seems clear that they could not re-establish their right, and avoid all the consequences of their negligence, by delivering on the premises an insignificant quantity of merchandise for no other purpose than to postpone the date when they "ceased" to furnish materials. As against the deed of trust their attempt to do so must be regarded as futile and ineffective. We are persuaded that the lumber company could not thus enlarge the time for filing a lien.

[2, 3] We are also of opinion that the lien is invalid because it is not shown that these belated items were ever put into the building. The West Virginia statute by plain implication, if not by direct statement, requires the lien claimant to show in a case like this that the materials furnished by him have actually been used in the building on which the lien is claimed. So the Supreme Court of Appeals of that state held in McConnell v. Hewes, 50 W. Va. 41, 40 S. E. 436, and we are bound by its construction of the statute. On this ground, also, the lien in question must be held invalid.

The case of Canton Roll & Machine Co. v. Rolling Mill Co., 168 Fed. 465, 93 C. C. A. 621, which constrained the court below to sustain the lien, turned mainly upon other questions, and seems distinguishable from the case at bar. Upon the facts here presented it is enough to say that we are impelled to the conclusions above stated, even if they appear in some degree at variance with the former decision.

The decree must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed.