TERRENCE J. QUINN

*v.*

BEVERAGES OF WEST VIRGINIA, INC., *et al.*

(No. 13592)

Decided April 9, 1976.

*McCamic, McCamic & Hazlett, Jeremy C. McCamic, Michael Tomasky* for appellant.

*Robert T. Donley, Ezra E. Hamstead* for appellees.

CAPLAN, JUSTICE:

This is an appeal from a final order of the Circuit Court of Monongalia County by which said court granted summary judgment for the defendants. The issues upon which said order was based were raised by the complaint and amended complaint, the answer and amended answer and the deposition of Rodney H. Kight.

In the action instituted below the plaintiff, Terrence J. Quinn, sought recovery from the defendants, Beverages of West Virginia, Inc., a West Virginia corporation, and Rodney H. Kight, for the breach of an alleged employment contract. Beverages of West Virginia, Inc., hereinafter sometimes referred to as Beverages, is a West Virginia corporation with its principal place of business in Morgantown, West Virginia. Its principal business is that of manufacturing and bottling soft drinks and the operation of vending machines at various locations throughout the state. Defendant Kight is the president of Beverages and a major stockholder in said company. It is alleged in the complaint that Quinn and Kight, as the result of a close friendship which had developed over a number of years, undertook to enter into a contract whereby Beverages would employ Quinn in an executive capacity.

Although it is readily acknowledged that no contract was ever entered into in writing, the plaintiff alleges that a contract was entered into orally which would later be reduced to writing. The plaintiff alleges that during December of 1969 the parties entered into a contract whereby the plaintiff agreed that he would resign his then position with Ametek, Inc. and move to Morgantown where he would assume the office of Executive Vice President of the defendant corporation and perform the responsibilities of that office. Under the terms of said oral contract the plaintiff alleged that he was to begin his duties of employment on February 2, 1970. It is further alleged that the corporation, Beverages, agreed to employ the plaintiff as Executive Vice Presi-

dent; to pay the plaintiff for his service at the rate of $35,000.00 a year; to pay the plaintiff all moving expenses incurred by himself and his family in moving to Morgantown; to provide the plaintiff with an automobile, appropriate insurance and all operating expenses; to provide the plaintiff with life insurance in the face amount of $100,000.00, naming his family as beneficiaries; to provide the plaintiff and his family accident and health insurance; to pay the plaintiff all his reasonable and necessary business expenses; to transfer to the plaintiff, tax free, 4,688 shares of capital stock of the defendant corporation; and, under Paragraph I, to "grant plaintiff the option to purchase at eighty percent (80%) of par value an additional number of shares in defendant corporation at any time within [as amended] seven (7) years following February 2, 1970, so that the plaintiff's total holdings could total Thirty-three per cent (33%) of the capital stock of the corporation should he elect to exercise fully said option." Other agreements and alleged breaches of said agreements were noted and listed in the complaint.

The answer of the defendants denied that they ever entered into any agreement express or implied with the plaintiff. The answer admits that the plaintiff did begin to perform certain services for the corporation on February 2, 1970 and that he was paid $673.08 a week for said service which is payment on the basis of $35,000.00 a year. The defendants contend, however, that such services were performed pending final negotiations between the plaintiff and defendant corporation and that the contract of employment resulting therefrom would ultimately be reduced to writing. The defendants did admit that they agreed to pay to the plaintiff his moving expenses and that they were to furnish to the plaintiff an automobile for his use in the conduct of his business and the operating expenses including insurance thereon. However, they denied that such arrangements were made pursuant to the alleged contract set forth in the complaint. Basically the answer of the defendants, while

admitting certain matters, constitutes a denial of the plaintiff's allegations in his complaint.

As a defense, the defendants say that by reason of the contract not having been reduced to writing, said contract was voided by the Statute of Frauds, *W. Va. Code*, 1931, 55-1-1(f). Although the foregoing is stated as the second defense, the defendants on this appeal do not rely on such Statute of Frauds, and, in fact, do not argue that point. In the defendants' fourth defense they contend that it was the understanding between the parties that any agreement reached between them was to be reduced to writing and duly signed and executed by each of the parties and that such writing, signing and execution were to be a condition precedent to the formation of any contract; that although several drafts of the contract were proposed the parties were not able to agree upon any terms; and that by reason of the failure of the condition precedent to occur no contract was entered into between the parties.

It appears from the record that the plaintiff did in fact terminate his employment with Ametek, Inc. in the State of Pennsylvania and did move to Morgantown and assume employment with Beverages, Inc. on February 2, 1970. It is admitted that he was paid on a week to week basis at the rate of $673.08 a week for the performance of said services. It is further evident from the deposition of Mr. Kight that several meetings took place wherein the parties attempted to arrive at some agreement on the terms of Quinn's employment but that such agreement was never reached and certainly no terms were ever reduced to writing. Several drafts of proposed agreements, some of which are illegible, are in the record and other evidence exists in the record which would indicate that the employment of Quinn was considered seriously by Beverages, Inc. Quinn undertook such employment, as indicated, on February 2, 1970 and worked until August 26, 1970 at which time he voluntarily terminated his employment, according to the deposition of Kight.

In Paragraph I of the original complaint the plaintiff alleged that the defendants granted him an option to purchase additional stock in the defendant corporation "over the" seven years following February 2, 1970. In its second defense the defendants noted that the contract was not in writing and that it was not to be performed within a year from the making thereof. Therefore, say the defendants, said oral contract falls within the provisions of the Statute of Frauds as contained in *Code* 55-1-1(f) and they relied thereon as a defense to any alleged breach of contract.

Subsequently, on March 19, 1973, the plaintiff was granted leave to amend his complaint. The amendment related to Paragraph I, quoted earlier in this opinion and alluded to above. In the amended complaint the plaintiff alleged that the defendants granted him an option to purchase additional shares in defendant corporation "at any time within" the seven years following February 2, 1970.

Thereupon, the defendants amended their answer, the principal effect of which was to thereafter rely on the Statute of Frauds as contained in *W. Va. Code*, 1931, 46-8-319(a) as amended, instead of on *W. Va. Code*, 1931, 55-1-1(f). Said code section (319) provides, in part: "A contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for the sale of a stated quantity of described securities at a defined or stated price." The defendants' answer further alleged that there was no writing signed by them or by an authorized agent or broker sufficient to indicate that a contract had been made for the sale of a stated quantity of shares of stock at a defined or stated price.

The defendants thereafter filed a motion for summary judgment, the grounds therefor being that there was no compliance with the provisions of *Code* 46-8-319(a), as

amended, as noted above. Further, contended the defendants, any agreement as alleged by the amended complaint could not have been performed within one year and was therefore within the Statute of Frauds as provided in *W. Va. Code*, 1931 55-1-1(f).

On December 13, 1974 the court granted the defendants' motion for summary judgment, finding that they were entitled to such judgment as a matter of law. It is reflected in the order that the entire basis for the holding of the court relates to the Statute of Frauds as embodied in *W. Va. Code*, 1931 46-8-319, as amended. The court held that the alleged contract sued upon was an oral contract, part of which provided for the sale of securities and that, there having been no compliance with the requirements of the above statute, such alleged sale was within the Statute of Frauds and was unenforceable. The court further held that the "alleged memorandum" produced by the plaintiff was not legally sufficient to constitute a compliance with the requirements of said statute.

The court then held that since a part of the alleged contract was within the Statute of Frauds, the entire alleged contract was within said statute and was unenforceable; that the said Statute of Frauds was a complete defense to the plaintiff's cause of action; and, that there was, therefore, no genuine issue as to any material fact.

The principal issues to be considered and resolved on this appeal are: (1) Whether the oral option to purchase corporate stock, as alleged in Paragraph I of the complaint, constitutes a contract for the sale of securities, as contemplated by *W. Va. Code*, 1931 46-8-319, as amended; (2) whether the plaintiff complied with the requirements of the aforesaid statute so as to take the contract for the sale of securities outside the Statute of Frauds; and, (3) if there was a contract for the sale of securities which was unenforceable by reason of the

Statute of Frauds, is the entire alleged contract therefore within said Statute of Frauds and unenforceable.

Paragraph I of the amended complaint, quoted above, alleges that the defendants orally agreed to grant to the plaintiff an option to purchase up to 33% of its corporate stock at anytime within seven years after February 2, 1970. This gives rise to the first issue noted above. In answer thereto, we are of the opinion that such alleged oral option constitutes a contract for the sale of securities. According to the plaintiff's allegation, the defendant agreed to give him an option to purchase stock. This has been designated as an offer which is in itself a contract. 1 Restatement of Contracts, Sec. 46. The plaintiff, under his allegation, could purchase up to 33% of the corporate stock at any time within seven years from the time of his employment.

"An option generally is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a specified time. It is a contract to sell if the other party shall elect to purchase within the time given." *McDermott v. Fairmont Gas & Light Co.*, 88 W. Va. 692, 707, 108 S.E. 264 (1921). See *Morris v. Risk*, 86 W. Va. 30, 102 S.E. 725 (1920); *Smith v. Peterson*, 71 W. Va. 364, 76 S.E. 804 (1912); *Fulton v. Messenger*, 61 W. Va. 477, 56 S.E. 830 (1907); *Dyer v. Duffy*, 39 W. Va. 148, 19 S.E. 540 (1894) and *Watson v. Coast*, 35 W. Va. 463, 14 S.E. 249 (1891).

In principle, insofar as this issue is concerned, no significant difference is discernible between an option to purchase goods or corporate stock and an option to purchase real estate. It has been widely held that an option to purchase real estate is a unilateral contract of sale and must be in writing in order to comply with the Statute of Frauds. *Pigeon v. Hatheway*, 156 Conn. 175, 239 A.2d 523 (1968); *Bratt v. Peterson*, 31 Wis. 2d 447, 143 N.W. 2d 538 (1966); *McGuirk v. Ward*, 115 Vermont 221, 55 A.2d 610 (1947); *Neely v. Sheppard*, 185 Ga. 771, 196

S.E. 452 (1938). Therefore, whether it be an option for the sale of real estate or of goods, merchandise or corporate stocks, said option creates a contract of sale and is subject to the requirements of the Statute of Frauds. This was succinctly stated in *Illinois-Indiana Fair Ass'n. v. Phillips*, 328 Ill. 368, 159 N.E. 815, 817 (1927), in the following language: "The doctrine that a contract for the sale of corporate stock is one for the sale of 'goods, wares, and merchandise,' within the statute of frauds, is almost unanimously recognized by the courts of this country." *See, Leadbetter v. Price*, 103 Ore. 222, 202 P. 104 (1921).

In view of our conclusion that the alleged oral option constitutes a contract for the sale of securities, we must now consider whether there was compliance with the requirements of the Statute of Frauds embodied in *W. Va. Code*, 1931, 46-8-319. The significant part of that statute is quoted above, it being noted therein that a contract for the sale of securities is not enforceable unless it is evidenced by a writing signed by the party against whom enforcement is sought and that said writing is sufficient to indicate that a contract has been made for the sale of a stated quantity of described securities at a stated price.

The plaintiff submitted the following paper as evidence of compliance with said Statute of Frauds:

579

Right Disposition #1

Conversation 12/20/69

HAVE AND/OR EARN

Stock
~~125%~~
~~70%~~ min. — short RUN
START is possible

33% Long term Still open
MAXIMUM 5-7 YEARS

80% OF PAR — cost if possible

SALARY not involved with
stock — additional to also
include tax cost. On top of base

$35,000 Base

Feb 2, 1970

Moving Exp. + Car + Ins.

Will call Sunday

Stock 2/2/70    12/14/69    Devereaux
1448 University    T. H. Victor
Grove.

We agree with the trial court's finding that the above "alleged memorandum" is insufficient to constitute compliance with the requirements of *W. Va. Code*, 1931, 46-8-319 *as amended.* That provision of the contract alleged in the plaintiff's complaint (Paragraph I) is therefore unenforceable.

One provision of the alleged contract having been held unenforceable as being within the Statute of Frauds, we must now consider the validity of the defendants' contention that the entire contract is thereby rendered unenforceable. In other words, is the unenforceable contract provision severable, leaving for consideration the remainder of the alleged contract; or, is the contract not subject to severability and, therefore, wholly within the Statute of Frauds?

The main thrust of the defendants' argument is that the promises in the alleged oral contract are so interdependent that the parties would not have entered into such contract without the stock option provision. Furthermore, the defendants assert, permitting the severance of such provision would amount to a rewriting of the contract.

According to the authorities who have written on the subject, there is no well defined rule which determines in all cases what contracts are severable and what are entire. The primary criterion for making that determination is the intention of the parties as reflected from a fair construction of the terms of the contract itself, the subject matter of the contract and the circumstances which gave rise to the question. It was stated as the general rule in *American Chlorophyll, Inc. v. Schertz,* 176 Va. 362, 11 S.E.2d 625 (1940), "that the entirety or divisibility of the contract is dependent on the intention of the contracting parties."

In *Keene v. Harling,* 38 Cal. Rptr. 513, 392 P.2d 273 (1964) the court, quoting from *Pacific Wharf & Storage Co. v. Standard American Dredging Co.,* 184 Cal. 21, 24, 192 P. 846, 849 (1920), said: "Whether a contract is entire or separable depends upon its language and subject-matter, and this question is one of construction to be

determined by the court according to the intention of the parties." The following significant language reflects the view held by the majority of the courts: "Whether a contract is entire or severable is a matter which cannot be determined with mathematical precision, as it has been said that there is no set formula which furnishes a foolproof method for determining in a given case just which contracts are severable and which are entire * * *. The primary objective is to ascertain the intent of the contracting parties, as such intent is manifested by not only the several terms and provisions of the contract itself, but also as such are viewed in the light of all the surrounding circumstances, including the conduct of the parties before any dispute has arisen." *John v. United Advertising, Inc.*, 165 Colo. 193, 439 P.2d 53 (1968). *See, Thorpe v. Schoenbrun*, 202 Pa. Super. 375, 195 A.2d 870, 99 A.L.R. 2d 245 (1963); *Knight v. Hamilton*, 313 Ky. 858, 233 S.W.2d 969, 26 A.L.R. 2d 212 (1950); and, *Saletic v. Stamnes*, 51 Wash.2d 696, 321 P.2d 547 (1958).

Applying the foregoing principles to the instant case, we are of the opinion that Paragraph I of the alleged contract contained in the complaint is severable. We base this decision on a consideration of the subject matter of the alleged contract and upon a fair construction of the terms thereof. Also, pertinent to the decision are the circumstances which led up to this controversy and the conduct of the parties.

The contract alleged by the plaintiff is basically an employment contract, not a contract to purchase stock. By its terms, if proved, the plaintiff agreed to work for the defendants and the latter agreed to employ the plaintiff. It is alleged by the plaintiff that pursuant to the oral contract he resigned his position with a former employer and moved with his family to Morgantown; that he did, in fact, begin such employment on February 2, 1970 and assisted in the management of the business of the defendant corporation.

The plaintiff alleges that the defendants made the following oral promises: (1) To employ the plaintiff as Exec-

utive Vice President with managerial responsibilities; (2) to pay the plaintiff an annual salary of $35,000.00; (3) to pay all moving expenses of the plaintiff and his family; (4) to provide the plaintiff with an automobile, automobile insurance and all operating expenses; (5) to provide the plaintiff with a $100,000.00 life insurance policy naming his family as beneficiaries; (6) to provide the plaintiff and his family with health and accident insurance; (7) to pay the plaintiff's reasonable and necessary business expenses; (8) to transfer to the plaintiff 4,688 shares of capital stock of the defendant corporation; and, (9) to grant the stock option herein referred to.

It is further alleged in the complaint that the plaintiff began his duties of employment on February 2, 1970 and that the defendants did partially perform under the terms of the contract as follows: (1) they employed the plaintiff as Executive Vice President; (2) provided his automobile, automobile insurance and operating expenses; (3) provided the aforementioned $100,000.00 insurance policy; (4) provided plaintiff and his family health and accident insurance; and (5) paid the plaintiff his reasonable and necessary business expenses.

The defendants deny most of these allegations. However, it is undisputed that the plaintiff did begin his employment on February 2, 1970 and was paid a weekly sum which amounted to a $35,000.00 annual salary.

Another circumstance significant to the issue of severability of the stock option provision was the negotiations, between the parties, which, in our opinion, revealed an intention to enter into the employment contract even though the stock was not available to the plaintiff. It is reflected in defendant Kight's deposition that the parties had discussed the possibility that Quinn could obtain up to 33% of the corporation's stock; that Kight expressed doubt that such quantity of stock would be available; and, that he told Quinn that there was a possibility that he, Quinn, could become such stockholder, but that it might be dependent upon his sister's willingness to sell her shares. Despite this display of

indecision and uncertainty concerning the possibility of
Quinn acquiring up to 33% of the stock, it is obvious
that the parties continued to discuss other provisions of
the employment contract. This persuades us that the
parties intended, or at least continued to consider the
employment contract even if the stock was not available
in the quantity mentioned in Paragraph I of the com-
plaint.

Considering the subject matter of the alleged contract,
a fair construction' of the terms thereof and the circum-
stances which gave rise to this controversy, we conclude
that the intention of the parties—the criterion used by
the majority of authorities—was to treat the stock op-
tion provision as being severable. In other words, the
foregoing considerations lead us to believe that the elim-
ination of said stock option was not fatal to the main
purpose of the alleged employment contract. In the cir-
cumstances revealed by the record we do not believe
that the stock option provision was of such import that
the parties would not have entered into the contract
without it.

Furthermore, the main objective of the contract can
readily be accomplished in the absence of the stock op-
tion provision. This, of course, creates some deviation
from the terms of the alleged contract. We disagree,
however, that our holding constitutes a fatally defective
rewriting of the contract as asserted by the defendants.
To apply the defendants' assertion in every case would
be to deny the existence of severable or divisible con-
tracts.

Although the defendants deny the existence of any
oral contract, they do not, upon this appeal, rely on the
Statute of Frauds contained in *W. Va. Code*, 1931, 55-1-
1(f) as a basis for holding the remainder of the alleged
contract unenforceable. However, having pleaded said
statute below, they are not precluded, upon trial, from
presenting such statute in their defense.

In view of the foregoing, we are of the opinion that the trial court erred in granting summary judgment. Therefore, this case is remanded for trial on the issue of whether the parties did enter in to an enforceable oral contract. The stock option provision, having been held to be unenforceable by reason of the Statute of Frauds, will not be considered in further proceedings.

*Reversed and remanded.*

FLOWERS, JUSTICE, *concurring in part and dissenting in part:*

I concur in the majority opinion to the extent that it holds that an option to purchase corporate stock, which is not reduced to writing and signed by the party against whom enforcement is sought, is unenforceable by reason of *W. Va. Code*, 46-8-319, as amended. I dissent, however, from that portion of the opinion which holds that the stock option provision of the oral contract in this case was severable from the remaining provisions of the contract.

The majority opinion correctly states that the question of severability turns upon the ascertainment of the intention of the parties through interpretation or construction of the terms of the contract and the conduct of the parties during their negotiations as viewed in light of the surrounding circumstances. The principle of severability, however, must be employed with great caution for it is generally difficult for a court to determine whether the parties would have entered into an agreement at all without the provision which is violative of the Statute of Frauds. Williston, Contracts, § 532, p. 760 *et seq.*

The majority has concluded that the uncertainty of the amount of stock or its time of delivery to the plaintiff contrasted with other fixed terms of employment demonstrates that the parties considered the matters severable. I do not draw the same conclusion from their conduct.

The contract was essentially for employment which was apparently terminable by either party at any time. I simply doubt that the plaintiff would have entered into such a tenuous relationship if he had not relied upon being at least a part-owner of the business which became his employer. To leave a position of secure employment and disrupt his family from their community for a week to week employment situation is not the quality of decision we should presume was made by one who is offered such executive responsibilities.

Because I believe the option to purchase stock was an inextricable part of the employment agreement, I would affirm the judgment of the Circuit Court of Monongalia County.

I am authorized to state that Justice Berry joins me in this opinion.