L.D.A., INC.

*v.*

JOSEPH F. CROSS

(No. 14234)

Decided June 23, 1981.

*Rodgers, Kiser & O'Brien and William A. O'Brien* for appellant.

*James B. Crawford III* for appellee.

McHUGH, JUSTICE:

This action is before this Court upon the petition of L.D.A., Inc. for a writ of error and supersedeas from a final order of the Circuit Court of Jefferson County, West Virginia, upon all pleadings, exhibits and other matters of record and upon the memoranda of law filed by counsel.

L.D.A., Inc. (hereinafter "appellant") seeks review of the dismissal of its cause of action by the Circuit Court of Jefferson County. In that action, the appellant sought damages for the total loss by fire of a modular home it was building pursuant to a construction contract.

Joseph F. Cross (hereinafter "appellee") obtained a loan in the amount of $21,500 from the Farmers Home Administration of the United States Department of Agriculture to finance the purchase of a lot from the appellant and to have the appellant construct a home upon the lot pursuant to plans and specifications filed with the Farmers Home Administration by the appellant. The appellant, a building contractor, is a corporation authorized and qualified to do business in West Virginia.

Thereafter, on November 21, 1974, a closing transaction was held in the office of Douglas Rockwell, an attorney designated by the Farmers Home Administration. At this closing, the appellant sold a lot to the appellee and his wife. A promissory note and deed of trust were executed by the appellee and his wife securing the Farmers Home Administration in the amount of $21,500. Furthermore, at this closing the appellee entered into a written construc-

tion contract wherein the appellant agreed to construct a home upon the lot for the sum of $18,500 to be paid by the appellee.

As indicated in the petition, at the time of the closing transaction, the appellee produced a fire insurance policy, with a receipted premium payment, covering improvements to the lot and designating the Farmers Home Administration as the payee beneficiary of the policy. As the petition and final order of the Circuit Court of Jefferson County indicate, this fire insurance policy was required by the Farmers Home Administration as a condition for the $21,500 loan.

The appellant was paid for the lot and $18,500 for the construction of the home was placed in escrow.

On or before December 7, 1974, the two halves of the modular home were delivered to the appellee's lot for assembly. The appellant employed Besser Construction Company, Inc. as a subcontractor to assist the appellant in the construction of the home. On December 7, 1974, the home was destroyed by fire without fault on the part of the appellant or the appellee.

The appellant asserts that it provided labor and materials pursuant to the construction contract in the amount of $18,500 less $715 or $17,785. Upon the appellant's demand, however, the appellee refused to pay the contract price.

Consequently, on May 17, 1975, the appellant instituted a contract action against the appellee in the Circuit Court of Jefferson County. On March 22, 1976, the circuit court received evidence at a non-jury hearing. By final order entered July 11, 1977, the circuit court dismissed the appellant's action.

Essentially, the circuit court dismissed the appellant's action because the court determined that the construction contract was an entire contract rather than a severable contract, and, accordingly, inasmuch as the home was not completely finished prior to the fire, the appellant should bear the loss. Furthermore, the circuit court determined

that the appellee's fire insurance policy was for the benefit of the Farmers Home Administration only and not related to the claim of the appellant.

It is from the July 11, 1977, order of the Circuit Court of Jefferson County that the appellant appeals to this Court.

The appellant contends that the construction contract was severable or apportionable rather than entire, and therefore the appellant has a right to recover from the appellee its loss caused by the December 7, 1974, fire. The appellant further contends that the appellee assumed the risk of loss arising under the contract as indicated by the fact that the appellee was required to obtain insurance upon the premises prior to the completion of the home.

On the other hand, the appellee contends that the construction contract was an entire contract and that, inasmuch as the home was not completed prior to the fire, the appellant cannot recover. The appellee further contends that even if the contract were severable or apportionable, the appellant had not, at the time of the fire, satisfied the provisions in the construction contract relating to partial payment. Finally, the appellee contends, as the circuit court concluded, that the appellee's fire insurance policy was for the benefit of the Farmers Home Administration and not related to the claim of the appellant.

Two provisions of the November 24, 1974, construction contract appear to relate to whether the contract was entire or severable. Page one of the contract provides as follows:

> Partial payments not to exceed 60 percent of the value of the work in place (less the aggregate of previous payments) will be made at intervals of construction. The value of work in place shall be as estimated by the contractor and approved by the Farmers Home Administration. Prior to receiving any partial payment, the contractor must furnish the owner with a statement showing the total amount owed to date for materials and labor procured under this contract and, if required by the owner or the Farmers Home Administration, must

also submit evidence showing that previous partial payments were properly applied and that the current payment will be properly applied. Upon completion of the whole contract and acceptance of the work as required hereunder, by the owner and the Farmers Home Administration, and compliance by the contractor with all terms and conditions of this contract, the amount due the contractor will be paid.

Page three of the contract provides as follows: "VI. Notices and approval in writing.—Any notice, consent, or other act to be given or done hereunder will be valid only if in writing."

In *Quinn v. Beverages of West Virginia*, 224 S.E.2d 894 (W. Va. 1976), the plaintiff filed an action in the Circuit Court of Monongalia County, West Virginia, against a corporate employer and its president to enforce the provisions of an alleged oral contract of employment. The circuit court entered summary judgment in favor of the defendants.

This Court in *Quinn* agreed with the circuit court that that portion of the alleged employment contract providing for the sale of securities to the plaintiff was unenforceable because it was not reduced to writing. This Court further concluded, however, that the securities purchase provision was severable from the remainder of the alleged employment contract. Accordingly, the case was remanded for trial upon the issue of whether the parties in fact entered into an employment contract. This Court held in Syl. pt. 2 as follows:

> Whether a contract is entire or severable is a determination to be made by the court according to the intention of the parties and such intention shall be ascertained from a consideration of the subject matter of the contract, a reasonable construction of the terms thereof and the conduct of the parties during their negotiations, all of which should be viewed in the light of the surrounding circumstances.

Accordingly, as the *Quinn* case indicates, whether a contract is entire or severable is a question of law to be

resolved by the court after considering several factors. In the case before this Court, the Circuit Court of Jefferson County made that determination and concluded that the construction contract was entire rather than severable.[1]

In *Hysell v. Sterling Coal & Manufacturing Co.*, 46 W. Va. 158, 33 S.E. 95 (1899), the plaintiff was employed to place a roof on a dwelling house belonging to the defendant. When the work was almost finished, the house was entirely destroyed by fire without negligence on the part of the plaintiff. The building was insured for the defendant's benefit.

In *Hysell*, the Circuit Court of Mason County entered judgment for the plaintiff, and the defendant appealed alleging that the contract was an entire contract, and that inasmuch as the plaintiff's work was incomplete when the building was destroyed, the plaintiff could not recover. This Court, however, affirmed the judgment in favor of the plaintiff and held that regardless of the contract, the plaintiff was entitled to recover on a *quantum meruit* basis for work and labor performed and material furnished.

Specifically, this Court stated in *Hysell* that as the plaintiff's work progressed, the material used became the defendant's property and the defendant should bear the loss. As this Court stated:[2]

> The suit is therefore not on the contract, but as though there was none but an implied contract to pay what the services rendered were reasonably

---

[1] It should be noted, however, that this Court held in Syl. Pt. 1, *Pierce v. Pierce*, 274 S.E.2d 514 (W. Va. 1981), that "[i]n reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law." Syl. pt. 1, *Burks v. McNeel*, 264 S.E.2d 651 (W. Va. 1980).

[2] This Court in *Hysell* recognized two classes of entire contracts. In the first class, the contractor assumes the risk of completion, and the contractor's compensation is adjusted accordingly. In the second class of entire contracts, the contractor does not assume the risk of completion. In this latter class, the contractor receives a fair compensation for the material furnished and labor performed ". . . without regard to attendant risks." 46 W. Va. at 161.

In *Hysell* this Court determined that the plaintiff received nothing for the risks involved. 46 W. Va. at 162.

worth. The recission [sic] is the fault of the defendant, in not making it possible for the plaintiff to carry out or complete his contract, and it is not excused therefrom by reason of the building being consumed by fire.

46 W. Va. at 161.

However, in *McConnell & Drummond v. Hewes*, 50 W. Va. 33, 40 S.E. 436 (1901), certain contractors agreed to build a residence upon the owner's lot in Clarksburg, West Virginia. The contract price was $7,900.00 subject to payment in installments as follows:

> ... It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be seven thousand nine hundred dollars, subject to additions and deductions, as hereinbefore provided, and that such sum shall be paid in current funds by the owner to the contractor in installments, as follows: On estimates made by architects reserving twenty per cent of each payment until the work is completed.

In *McConnell & Drummond*, thee was a dispute in the record as to whether the owner verbally agreed that estimates would be made every thirty days and whether the owner was to make payments accordingly. Some money was paid by the owner to the contractors. However, no estimates were made by the architects pursuant to the contract. (50 W. Va. at 36 and 38).[3] By reason of insolvency, the contractors abandoned the work and filed a mechanic's lien suit in the Circuit Court of Harrison County, West Virginia, against the owner.

This Court held in *McConnell & Drummond* that material furnished by a contractor remains the property of the contractor and at the risk of the contractor until it has been incorporated into the structure upon the owner's real

---

[3] This Court in *McConnell & Drummond* stated that "[t]he evidence of the architects on whose certificates alone the installments were to be paid is not even taken to show the extent of the compliance of the plaintiffs with the contract." 50 W. Va. at 40.

estate. This Court further indicated that the construction contract was entire. As this Court stated: "Her [the owner's] contract with them was an entirety and this was to furnish the material and to build her a brick dwelling house on her lot at the price of seven thousand nine hundred dollars." 50 W. Va. at 40.[4]

In the case before this Court, we are of the opinion that the Circuit Court of Jefferson County was correct in concluding that the construction contract of November 24, 1974, was entire rather than severable. The above quoted provision for partial payment notwithstanding, the record indicates that the parties intended that the appellant would construct the modular home for a fixed price, $18,500.

Unlike the *Hysell* case which involved the construction of a roof upon a pre-existing dwelling, this case involved the construction of an entire dwelling. Considering the subject matter of this contract, as required by *Quinn*, this Court cannot fail to recognize that this dwelling was to be a modular home rather than a conventional home. Absent other factors to the contrary, we feel it safe to conclude generally that the construction of a modular dwelling by its very nature would cause parties to negotiate entire rather than severable contracts.

The contract held to be an entire contract in *McConnell & Drummond* provided for partial payments as did the contract in this case. Nevertheless, neither the parties in *McConnell & Drummond* nor the parties in this case acted pursuant to the specific partial payment provisions of the contract. The contract provisions for estimates upon which partial payments were to be made were not followed in *McConnell & Drummond* or in this case. Moreover, in this case, the appellant was to receive partial payment at "intervals of construction" and upon the furnishing by the

---

[4] This Court in *McConnell & Drummond* held in Syl. pt. 8 that "[a] contract to erect a building at a fixed price is an entire contract and must be performed in accordance with its expressed terms as contained in the writing creating it, unless properly modified in a legal manner."

appellant of a statement to the appellee showing the amount owed. The intention of the parties as to what constituted an interval of construction cannot be determined from this record. Nor did the appellee receive a statement prior to the fire indicating that partial payment was due.

In *Dillon & Harrison v. Suburban Land Company*, 73 W. Va. 363, 80 S.E. 471 (1913), the plaintiffs agreed to construct two miles of road upon the defendant's land. The contract price was $3,000 per mile. Estimates of work completed were to be made every two weeks whereupon the defendant, withholding 10 per cent until final completion, was to make payments. On or about July 1, 1908, nearly a mile of the road was constructed when the plaintiffs became unable to complete the contract. Pursuant to the contract, estimates and payments to the plaintiffs had been made. 73 W. Va. at 371. There was some evidence in the record to the effect that a new contract had been negotiated between the parties upon the failure of the original contract.

The Court in *Dillon & Harrison* recognized that the defendant had a cause of action for the breach by the plaintiffs of the construction contract. The Court further recognized, however, that, if the contract were apportionable, the plaintiffs had a cause of action for work done and material furnished.[5]

Specifically, this Court in *Dillon & Harrison* held the original construction contract to be apportionable. As this Court stated in Syl. pt. 4: "Where such contract provides for periodical payments on the contract price, on estimates of engineers, it is apportionable, and there is no obstacle in the way of a proper recovery for the work done and material provided." In making its decision, this Court noted that

---

[5] This Court in *Dillon & Harrison* held in Syl. pt. 3 that "[r]ight of recovery for work done and material furnished under such a broken contract is dependable, however, on whether the contract is apportionable; if not, the rule is that no part of the consideration can be recovered."

bimonthly estimates were made and payments to the plaintiffs were made.

Unlike the case before this Court, estimates and partial payments in *Dillon & Harrison* were in fact made. Furthermore, again considering the subject matter of the contract as required by *Quinn*, we are of the opinion that a contract for the construction of a two mile road, as in *Dillon & Harrison*, is more subject to apportionment than a contract for the construction of a modular home.

Upon all of the above, therefore, we affirm the finding of the Circuit Court of Jefferson County that the construction contract was an entire contract rather than a severable contract.

Furthermore, we are of the opinion that the circuit court was correct in its determination that the insurance obtained by the appellee was for the benefit of the Farmers Home Administration and not related to the claim of the appellant resulting from the loss. During the proceedings in circuit court, the appellant benefited from the ruling of the trial judge, as reflected in the final order, that the procurement by the appellee of insurance was admissible evidence. However, we cannot state as a matter of law that the circuit court committed error in concluding that the insurance merely served to protect the Farmers Home Administration upon its loan to the appellee.

For these reasons, the July 11, 1977, order of the Circuit Court of Jefferson County is hereby affirmed.

*Affirmed.*